MIAMI SHORES VILLAGE, a municipal corporation under the laws of the State of Florida, et al., v. WM. N. BROCKWAY POST NO. 124 OF THE AMERICAN LEGION, a non-profit corporation.

24 So. (2nd) 33                          June Term, 1946
December 14, 1945                              En Banc

*Perry A. Nichols,* for petitioners.
*George J. Baya,* for respondents.
*Thomas H. Anderson,* as amicus curiae.

CHAPMAN, C. J.:

Section 8 of Article 8 of the Constitution of Florida grants to the Legislature the power to establish and to abolish municipalities, and to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the charters of same at any time. Chapter 18698, Special Acts of 1937, Laws of Florida, amended a previously existing charter of the Miami Shores Village, a municipal corporation of Dade County.

Grants of police power of the sovereign State through the Legislature are specifically enumerated and conferred under Sections 9 and 10 of Chapter 18698, supra, to the municipality. It has the power to regulate the height, size and location of buildings and other structures within the boundaries. Likewise the right to regulate the use of buildings, structures and lands for trade, industries, residence, apartment houses, and all or any other purposes . . . and for any of said purposes in promoting the safety, health, comfort, morals, convenience, peace, prosperity or general welfare of the inhabitants of the municipality.

It has the power to divide the municipality into zones of such numbers, shapes and areas as may be deemed best suited to effectuate the purposes enumerated in Section 9, *supra.* Within the several zones it could regulate and restrict the erection, construction, re-construction, alteration, repair, destruction or removal of buildings, land and structures, including billboards. The regulations were authorized to lessen traffic or street congestion so as to promote the common safety and prevent the overcrowding of land and to avoid undue concentration of population in any area or areas within the municipality. The exercise and enforcement of these enumerated powers were conferred by the charter on five members of the council, who were each elected by the voters of the municipality.

Sometime prior to April, 1945, the respondents, or some one in their behalf, signed an option agreement to acquire by purchase or otherwise described real estate situated within the municipality the use of which was restricted by Ordinance to residential purposes, and, accordingly, an application or request was made to the Village Council for the adoption of an Ordinance by the terms of which the residential restrictions on the use of the property would be removed, and the property re-zoned so as to permit the erection and construction thereon of an American Legion Home. Such an Ordinance was enacted and identified as Ordinance No. 140 under date of May 8, 1945. This Ordinance transferred or changed the use of the property from residential to a special one which made it lawful to erect and construct a Legion Home thereon. The special use to which the property was restricted by the terms of the Ordinance was identified as Zone L. The City issued a permit under Ordinance No. 140 for the erection and construction of the Legion Home on the day after its adoption, being May 9, 1945.

Shortly after the issuance of the permit *supra,* the respondents (1) employed construction engineers; (2) plans and specifications were prepared; (3) materials purchased; (4) excavations for the foundation were made; (5) the concrete was mixed and poured into the excavations as a foundation; (6) obligations for the costs of construction were outstanding on June 21, 1945; (7) the Village Council, on June 21, 1945, revoked the permit previously issued. Respondents assert that their action *supra,* after acquiring the permit, in law is equivalent to a vested property right which cannot be impaired and the municipality is not estopped from revoking or cancelling said permit.

The municipality was the defendant below and is the petitioner here, and it now strenuously contends that the doctrine of equitable estoppel is wholly inapplicable and that the conduct of the respondents in the premises is equivalent to bad faith and their deportment is such that they cannot assert on this record the claim of vested property rights because (1) respondents were not the owners of the land during April, 1945, when applying for the permit; (2) their interests

in the property are limited to the rights acquired under an option to purchase; (3) they did not own the title to the property on May 8, 1945, when the Council enacted Ordinance No. 140; (4) they knew or should have known that a majority of the residents of the municipality looked with disfavor on the re-zoning Ordinance; (5) that the adoption thereof immediately became an issue for those interested in the welfare of the municipality; (6) an election of Councilmen was to be held on June 19, 1945; (7) candidates were brought out pledged to the repeal of Ordinance No. 140 and the revocation of the permit; (8) prior to the election date hundreds of pieces of literature were distributed disapproving Ordinance No. 140; (9) the permit contained language viz: (a) "A further condition upon which this permit is granted is the understanding that the contractor or builder named above assumes the responsibility for a thorough knowledge of the ordinances and regulations pertaining to the work covered hereby shown on the plans or drawings or in the statements or specifications and that he assumes responsibility for work done by his agents, servants or employees"; (b) "In consideration of the issuance of this permit I agree to perform the work covered hereunder in compliance with all ordinances and regulations pertaining thereto and in strict conformity with the plans, drawings, statements or specifications submitted to the proper authorities of Miami Shores Village. In accepting this permit I assume responsibility for all work done by either myself, my agent, servant or employee. (s) C. F. Wheeler, Contractor or Builder."; (10) the foundation work began a day or so before election day; (11) the newly elected members took office June 21, 1945; (12) Ordinance No. 140 was rescinded by the newly elected Council by adoption of Ordinance No. 144.

Despite the storm warnings and red light signals of disapproval of the issuance of the permit which appeared and were shown by the people of the municipality from about the date of the issuance, and existed continuously until the date of excavation and the pouring of concrete, the respondents earnestly contended that they acquired vested rights in the premises protected by our fundamental law and the doctrine

of equitable estoppel appears on the record and should be applied to the municipality; that the arbitrary action of the Council of the Village in enacting Ordinance No. 144, which revoked or cancelled the permit, is not a legitimate exercise of the police power conferred by the charter on the municipality.

Considerable light on the issues presented on this record is found in our holding in the case of Godson v. Town of Surfside, 150 Fla. 614, 8 So. (2nd) 497. Generally speaking, a permit issued under mistake of fact or in violation of law confers no right or privilege on the grantee. The applicable principle is that every person is presumed to know the nature and extent of the powers of municipal officers. McQuillin on Municipal Corporations, Rev. Vol. 3 (2nd ed.), par. 1021; 9 Am. Jur. 204, par. 8.

This Court, in the case of Blitch v. City of Ocala, 142 Fla. 612, 195 So. 406, when considering the prerequisites of a fire ordinance enacted by the City of Ocala, in part said:

"Ordinances such as the one here under consideration are enacted under the general police power, and 'they must not (1) infringe the constitutional guarantees of the nation or State by (a) invading personal or property rights unnecessarily or unreasonably, (b) denying due process of law, or (c) equal protection of the laws, or (d) impairing the obligations of contracts; (2) must not be inconsistent with the general laws of the State, including the common law, equity and public policy, unless exceptions are permitted; (3) must not discriminate unreasonably, arbitrarily or oppressively, and (4) must not constitute a delegation of legislative or executive or administrative power. 'McQuillin, Municipal Corporations, 2nd ed., page 119.'"

In the case of Knowles v. Central Allapattah Properties, Inc., 145 Fla. 123, 198 So. 819, we in part said:

"Rights of property are protected by constitutional guaranties. This protection cannot be construed to mean that the use thereof cannot be regulated under the police power in behalf of the general welfare. This question was discussed and settled by this Court in the case of City of

Miami Beach v. Texas Co., 141 Fla. 616, 194 So. 368, text pages 375-6, where this Court said:

" 'While constitutional guaranties cannot be transgressed it is well settled law that the possession and enjoyment of all rights are subject to the police power and persons and property are subject to restraints and burden necessary to secure the comfort, health, welfare, safety and prosperity of the people. See 11 Am. Jur., page 1006, par. 267. It is a well settled rule that all property is held subject to the right of the State to regulate it under the police power in order to secure safety, public welfare, health, peace, public convenience and general prosperity. The rule is based upon the concept that all proprty is held on the implied condition or obligation that its use shall not be injurious to the equal rights of others to the use and benefits of their own property. The public interest is paramount to property rights. See 11 Am. Jur. page 1009, par. 268. The right of the State to regulate a business which may become unlawful is a continuing one, and a business lawful today may, in the future, because of changed conditions, the growth of population, or other causes, become a menace to the safety and public welfare and the continuance thereof must yield to the public good. 11 Am. Jur. page 1044, par. 284. The determination of what businesses are affected with a public interest is primarily for the Legislature, but is always open to judicial inquiry. 11 Am. Jur., page 1060, par. 294; Tyson & Bro. United Theatre Offices v. Banton, 273 U.S. 418, 47 S. Ct. 426, 71 L. Ed. 718, 58 A.L.R. 1236. The law requires that all police regulations must be reasonable under all circumstances. The validity of a police regulation therefore depends on whether, under all circumstances, the regulation is reasonable or arbitrary and whether it is reasonably designed to accomplish a purpose falling within the scope of the police regulation. See Mutual Loan Co. v. Bartel, 222 U.S. 225, 32 S. Ct. 74, 56 L. Ed. 175, Ann. Cas. 1913B 529.' "

Counsel for the respondent has cited many authorities, taken largely from other jurisdictions, to the effect that when a municipality issues a building permit in substantial compliance with its charter and applicable ordinances and the per-

mittee acts thereon and financial obligations are incurred in good faith on the strength of its issuance, there may be situations where afterwards the permit cannot be revoked or cancelled by the issuing authority without destroying vested property rights—and, when attempted, it becomes the lawful duty of the courts to apply in a case properly presented the doctrine of equitable estoppel.

Paragraph two of the bill of complaint alleged that the plaintiff was the owner in fee simple of the lots. Paragraph two was amended and then alleged that plaintiff was the equitable owner of the lots. Paragraph two was amended the second time by adding thereto portions of an order entered by the County Judge of Dade County approving a sale of a lot—the order being dated July 27th, 1945, while the suit at bar was filed July 9th, 1945. Each of these allegations were denied by answer and the burden of proof was on the plaintiff below. See Goodwin v. Phifer, 51 Fla. 441, 41 So. 597. The proof shows only that plaintiff paid $400.00 and received an option to purchase two of the three lots for the sum of $4,000.00. The cases cited and relied upon to sustain vested property rights and equitable estoppel were suits in which the permittees were owners in fee simple of the land on which the buildings were to be constructed. Respondents in the case at bar failed to establish ownership in them of the third lot.

Approximately six weeks intervened between the date of issuance of the permit and the pouring of the concrete. Within the municipality during the interim a hot municipal campaign was on and the issue was the defeat of the Councilmen voting for Ordinance No. 140, which authorized the permit. The candidates favoring repeal of the ordinance were elected and immediately adopted Ordinance No. 144. It would appear childish to assert that the permittees were without knowledge of these undisputed facts and for the respondents to wholly disregard them and simultaneously incur financial obligations incidental to the construction of the building under the questioned permit, shows that they acted while red flags were flying and cannot complain of lack of notice. The newly elected Councilmen, under the police power of the Charter and in the light of our above cited cases, had

and possessed the lawful right and authority to enact Ordinance No. 144.

It therefore follows that the petition for interlocutory writ of certiorari should be granted and the injunction order dated August 4, 1945 is hereby quashed.

TERRELL, BROWN, BUFORD and THOMAS, JJ., concur.

SEBRING, J., concurs in conclusion and judgment.