44 So.2d 808 (1950)
TEXAS CO.
v.
TOWN OF MIAMI SPRINGS.
Supreme Court of Florida, en Banc.
March 3, 1950.
Rehearing Denied March 24, 1950.
Herbert S. Sawyer, O.B. Simmons, Jr., and Evans, Mershon, Sawyer, Johnston & Simmons, Miami, for appellant.
Thomas H. Anderson, Miami, for appellee.
THOMAS, Justice.
It seems important at the outset to give a chronology of the pleadings and orders in this case.
The appellant, plaintiff in the equity court, brought suit for a declaratory decree and injunction, representing that it had acquired two lots by warranty deeds in the latter part of 1945 and the early part of 1946 for the lone purpose of erecting on them gasoline service stations. During negotiations for the purchase of the property it was ascertained from appellee that there was no existing ordinance prohibiting construction or operation of such stations at the particular locations, and before the deeds to the tracts were delivered, appellant submitted to appellee plans and specifications for the proposed buildings and received permits to construct them.
Possessed of this information and the permits, appellant consummated the deals for the purchase of the property. It was not possible immediately to construct the buildings, however, for the sole reason that permission could not be obtained from the Civilian Production Administration of the United States Government. Because of this obstacle and the resultant delay, the appellant applied to the appellee for renewals of the two permits, and these were granted in September, 1946.
Despite the commitments on behalf of the appellee, the town council the following month, October, 1946, passed an ordinance that no gasoline filling station should be erected within 850 feet of another station. The ordinance was declared to be an "emergency measure," and inasmuch as a station was already in existence within 850 feet of each of the sites owned by the appellant it would, if enforced, prevent fulfilment of the appellant's plan.
Upon petition for a temporary restraining order, the chancellor found that the buildings could not then be erected because of lack of permission from the Civilian Production Administration, and he observed in his order that the renewals would expire within a few months; so he denied the petition without prejudice to present it again when this authority had been granted, and he also "extended" the renewals.
About four months afterward an amended bill apprised the court that the restrictions were no longer imposable by the Civilian Production Administration and there was no obstacle, therefore, to building the stations except, of course, the ordinance, and the appellant renewed its *809 prayer that enforcement of the ordinance be enjoined.
The temporary injunction was entered 19 July 1947.
Nearly a year went by before the appellee filed its answer, and motion to dismiss, containing the ground that the bill as amended was devoid of equity, and another seven months passed before the bill was dismissed and the injunction dissolved. Then the court allowed the filing of an amended bill, containing the principal allegations, besides those already appearing in the original bill and in the first amendment, that in reliance on the information and permits obtained from the city, the appellant had expended the sum of $12,500 in the purchase of the property and, inasmuch as no answer had been filed for fifteen months after the filing of the original bill and eleven months after the injunction was entered, it had completed the construction of the filling stations at great cost. The appellee moved to dismiss this bill, too, on the ground, among others, that it was without equity, and the court ruled in the movant's favor.
We think the appellant's cause is pregnant with equity.
There seems to be no occasion to explore the law with reference to the proper exercise of police power, the power to revoke a permit, or to expound the law that no vested rights arise from a permit.
The appellant took the precaution before it purchased the property involved of going to the only place it could get authoritative information to determine whether the land could be used for the purpose intended. There it was advised that there was no inhibition against the construction of the filling stations and was granted formal permission to proceed. This authority was repeated and emphasized when the permits were renewed. Relying upon the information and the authorization from an official source, the appellant bought the land, and bought it for one purpose only.
It will be remembered that the final transfer was made early in the year 1946, while the permits had been issued late in the preceding year. Nearly a year was to pass before the council discovered that an emergency measure fixing the distance between filling stations was necessary "because the health or welfare of the Town is imperiled." But what new peril arose during those intervening months we do not comprehend.
Surely there is a real reason why the city's charter requires that there shall be intervals between the introduction of ordinances and their passage. So to act unhurriedly gives the opportunity for mature consideration by the council and for the people to voice objection or approval. The exception to the rule is that if the health or welfare of the citizens is jeopardized, the steps from the introduction to the passage may be accomplished in one meeting.
From the very nature of the enterprise it is inconceivable to us that the health or welfare of the populace became so suddenly endangered in 1947 by the construction of a filling station, which had been encouraged and authorized the year before, that the usual course in enacting ordinances could not be followed. Obviously the effect of such action was to make the ordinance, so far as the appellant was concerned, retroactive.
The whole picture presents, we think, a typical case of estoppel, and in all the circumstances we see no reason not to apply it as it would be invoked were the appellee an individual. The city permitted the appellant to go forward with its plan to purchase valuable property to further its business, and many months after the deal had been consummated repudiated, through the median of the so-called emergency ordinance, what its representatives had quite properly done, there having been certainly no impediment to the issuance of the permits at the time. See Frink v. Orleans Corporation, 159 Fla. 646, 32 So.2d 425. Dobbins v. Los Angeles, 195 U.S. 223, 25 S.Ct. 18, 49 L.Ed. 169; 40 A.L.R. 928 note.
To state it differently, no peril to the health or welfare of the inhabitants seems to have existed in 1945 when the permits were issued, or as late as September, 1946, when they were renewed, a month before the passage of the ordinance, or at least there was no threat of such magnitude as to command the attention of the legislative *810 body. Having allowed the appellant to proceed, the city should now be estopped from asserting that, by the method of proclaiming so belatedly an emergency, the permission given by the city had become undermined  all to the injury of one who recognized the city's authority and proceeded only after getting its sanction.
The history of the progress of the case confirms this view, for, to repeat, it was fifteen months after the bill was filed and eleven months after it was amended before the appellee attacked or answered it; it was eleven months after the injunction was entered before any effort was made to dissolve it; and meanwhile the filling stations had been constructed.
We are constrained to reverse the decree, with directions to proceed with the trial of the cause.
Reversed.
ADAMS, C.J., and TERRELL, CHAPMAN and ROBERTS, JJ., concur.
SEBRING and HOBSON, JJ., not participating.