75 So.2d 753 (1954)
BREGAR et al.
v.
BRITTON.
Supreme Court of Florida. En Banc.
September 3, 1954.
Rehearing Denied November 15, 1954.
Thompson, McDonald & Moran and J.D. Hobbs, Jr., Tampa, for appellants.
Whitaker Brothers and Mabry, Reaves, Carlton, Anderson, Fields & Ward, Tampa, for appellee.
HOBSON, Justice.
This is an appeal from a final declaratory decree in favor of plaintiff-appellee S.E. Britton, directing that a building permit be issued to authorize Britton to build a drive-in theater on certain property situated in Hillsborough County.
*754 Britton had instituted his suit in chancery against the Board of Adjustment, the Zoning Director, and the Board of County Commissioners of Hillsborough County. The bill in substance alleged the following history:
Britton in 1949 had purchased certain described lands and had placed a twenty foot billboard thereon, visible to persons traveling on Dale Mabry Highway, announcing that "Another Britton theatre will be erected on this 20-acre site. 900 car capacity." On January 3, 1950, pursuant to Chapter 24592, Special Acts 1947, the Board of County Commissioners of Hillsborough County by resolution adopted certain rules and regulations zoning the plaintiff's land as "A" or "Agricultural". Adjacent property to the south of plaintiff's land was zoned "C-3" or "Commercial Light Industrial District", and is partly occupied by a septic tank manufacturing plant. The area to the west of plaintiff's land was zoned "C-1" or "Neighborhood Commercial District", and is bounded on the west by Dale Mabry Highway, while the area to the north of plaintiff's land was zoned "R-1" or "Single-family Residential District". The area to the east of plaintiff's land was zoned partly "R-1" and partly "C-3", the latter classification having been given to the right of way of the Atlantic Coast Line Railroad Company. The twenty-foot sign aforementioned was continuously maintained on Britton's land, and a number of homes were constructed in the area to the north after the sign was erected. Britton, allegedly in doubt as to his right to build a drive-in theater while his property had the "A" classification, applied to the defendant Board of County Commissioners on July 25, 1952, to have his property re-zoned to "C-2" or "C-3". Due notice of public hearing was published in a newspaper of general circulation and notices were posted on telephone poles on plaintiff's land. A public hearing was held on August 29, 1952, at which no persons appeared to protest and on the same date the Board unanimously adopted a resolution changing the classification of plaintiff's property from "A" to "C-2".
Relying upon this resolution, the bill continues, Britton commenced to prepare his land for the construction of the theater, and bought sound equipment and accessories, the expenditure totalling about $28,000. Subsequently, however, he was notified by the attorney for the Board that a protest had been received from certain citizens, and that the Board would reconsider its resolution of August 29, 1952. He immediately notified the Board of his expenditures in reliance upon their prior resolution. On November 13, 1952, with knowledge of plaintiff's expenditures, the Board rescinded the August 29th resolution.
Thereafter, plaintiff filed an amended petition with the Board asking that his property be re-zoned from "A" to "C-2" or "C-3", gave due notice, and at public hearings produced evidence that the Britton property was "adaptable to commercial use only" but the Board by resolution on January 4, 1953, refused to re-zone.
On January 21, 1953 plaintiff made application to the defendant County Zoning Director for a permit for non-conforming use, which was denied by the Director on January 23, 1953, with the notation "Improper Zone". Thereafter an appeal was taken to the Board of Adjustment, but was denied on February 19, 1953.
The bill concluded with a prayer that the court enter an order determining whether the original classification was valid or invalid, declaring plaintiff entitled to construct a drive-in theater on his property, and granting such other relief as was necessary and proper.
To the bill, defendants filed motions to dismiss and to strike, which were denied, but the court permitted interested property owners to intervene as parties defendant.
A joint and several answer filed by the defendant public officials admitted the material allegations as to the proceedings, zoning regulations and dates alleged in the bill, denied that the Board of County Commissioners had "full knowledge" of expenditures *755 made by plaintiff before rescinding the resolution of August 29, 1952, and alleged, among other things, that the resolution was rescinded because it had not been properly adopted in that notices of hearing thereon had not been mailed by registered mail as prescribed by resolution of the Board adopted August 31, 1951, and as a result, interested property owners were not given an opportunity to be heard.
The answer of the intervening property owners admitted the material procedural facts alleged in the complaint.
Before the chancellor, counsel for the plaintiff, in stating the issues of the case, contended that both in making the original "A" classification of plaintiff's land (by the resolution of January 3, 1950) and in adopting on November 13, 1952 the resolution rescinding the prior resolution of August 29, 1952 (this action, if valid, having the effect of reclassifying the plaintiff's property from "C-2" to "A") the Board had acted arbitrarily, capriciously, and contrary to law. Defendants denied this and contended that the resolution of August 29, 1952, was totally invalid and void by reason of lack of notice as required by the zoning regulations. The chancellor took testimony, and admitted in evidence, inter alia, a transcript of testimony at hearings before the Board of County Commissioners. The admission of this transcript is assigned as error, but because of the view we take of the case and the result which we reach we do not consider it necessary to dispose of the question predicated upon this alleged error.
The court in its final decree held that the meeting of November 13, 1952, at which the resolution of August 29th was rescinded was not legally called, the action taken thereat was without force and effect, and the plaintiff's property therefore remained classified "C-2" which specifically authorizes the construction of a drive-in theater. The final decree continues as follows:
"Thereafter, another meeting was held January 4, 1953, pursuant to notice, in which the Board declined to rezone the property from `A' to `C-2', but which action did not have the force and effect of changing the classification from `C-2' back to `A'.
"This property was, among others, by an Act of the Legislature in 1953 incorporated within the corporate limits of the City of Tampa and borders on what is known as Dale Mabry Highway. It is common knowledge that this is a heavy traveled Highway between St. Petersburg and Tampa and has in the past several years been fast developing as a Commercial District and is continuously being so developed being occupied almost entirely by businesses and light industry while the neighboring or surrounding territory is used for residential purposes. Many of the intervenors or objectors purchased their residences with notice of a substantial sign on the premises that it was intended to erect a Drive-In Theatre on this site. The objections are not so much to the class or zone in which this property is placed as to the erection of a Drive-In Theatre because of the increased traffic occasioned thereby.
"The placing of the property in Zone `A' (`Agricultural District') is unjust, arbitrary and is without regard to the conditions existing and has no relation to public health, safety or welfare. The various actions taken by the Board serve only to place or leave this property in Zone `C-2' where, because of its location and the development of this territory, is where the property belongs and is so Adjudged by this decree. The only reason assigned by the Zoning Director for refusing a permit being `improper zone', the plaintiff is, herefore, entitled to to his permit. It is so Ordered."
Considering some of the facts which would have bearing upon the constitutionality of the original "A" classification in this case, namely, the proximity to the property in question of the heavily traveled highway and the property zoned *756 for business, it would seem that the case is quite close to Miami Shores Village v. Bessemer Properties, Fla., 54 So.2d 108, in which we affirmed an order of the chancellor holding a zoning ordinance unconstitutional. We find it unnecessary to decide whether the Bessemer case is controlling, however, because we are of the opinion that the action of the defendant zoning authorities on November 13, 1952, purporting to rescind the earlier resolution classifying plaintiff's property as "C-2", was illegal and void under the principles of equitable estoppel as applied by this court in Texas Co. v. Town of Miami, Springs, Fla., 44 So.2d 808. The cases of Gross v. City of Miami, Fla., 62 So.2d 418 and Miami Shores Village v. Wm. N. Brockway Post, 156 Fla. 673, 24 So.2d 33, are clearly distinguishable from the case at bar in that it affirmatively appeared in both of the cited cases that the party claiming to have been injured by his action in reliance upon an official determination had good reason to believe, before or while acting to his detriment, that the official mind would soon change, as it did. The record discloses no such fact in the case before us.
The action of the Board on November 13, 1952 having been invalid, we proceed to examine the resolution of August 29, 1952. Appellants contend that this resolution was invalid because not predicated upon notice to property owners by registered mail, as required by a regulation of the Board. Appellees contend that the Board had no power to prescribe these notice requirements, because they are supplemental to those imposed by the enabling act, Chapter 24592, Acts of 1947. Section 4 of this act authorizes the Board to establish or change zoning regulations after a public hearing thereon, but provides that "at least fifteen days' notice of the time and place of such hearing shall be published in a paper of general circulation in such county." It will be noted that this language is almost identical with that of its cognate provision in the general zoning laws, F.S. § 176.05, F.S.A. It is plain, however, that if, as appellants contend, the public officials concerned had power to supplement the statutory notice requirements, they also had power to waive their own regulations, as we hold that they did in adopting the resolution of August 29th. Appellants further contend, however, that the statutory notice requirements above quoted were not fulfilled before the August 29th hearing. We find this contention to be without merit. The record contains a certified copy of the resolution unanimously adopted on that date which recites that notice was published on August 14, 21 and 28, 1952, in the Tampa Daily Times. The description of the property in the resolution is different from the description given in the published notice, but it appears that the latter description includes the former property and appellants have not demonstrated otherwise. The contention that the notice is invalid for not containing the words "drive-in theater" cannot prevail because it was clearly stated in the notice that the petition upon which the hearing was to be held was an application "to re-zone from A to C-3" as in fact it was. Compare City of Hollywood v. Rix, Fla., 52 So.2d 135, in which the statutory notice and hearing requirements were not observed.
The intervenors cannot be heard to complain of this result, for the statutory notice requirements promulgated for their benefit were followed, and they made out no case below upon which the chancellor could have granted them relief.
Other questions are raised, but we find them without merit. The final decree appealed from is affirmed.
ROBERTS, C.J., and TERRELL THOMAS, SEBRING and MATHEWS JJ., concur.
DREW, J., concurs in judgment of affirmance only.