97 So.2d 47 (1957)
CITY OF FT. LAUDERDALE, Appellant,
v.
LAUDERDALE INDUSTRIAL SITES, Inc., et al., Appellees.
No. 16.
District Court of Appeal of Florida. Second District.
September 18, 1957.
*48 Julian E. Ross and Donald Norman, Ft. Lauderdale, for appellant.
Cabot & Cabot, Ft. Lauderdale, Saunders, Curtis, Ginestra & Gore, Ft. Lauderdale, Schwarz & Zinn, Bart L. Cohen, Miami, Russell L. Frink, Jacksonville, for appellees.
ALLEN, Judge.
This appeal is to review a final decree in which the lower court held that the City of Ft. Lauderdale, defendant below, was estopped from enforcing zoning ordinance No. C-1153 against the appellees upon the grounds of equitable estoppel.
The action was initiated by an action for a declaratory judgment brought by Lauderdale Industrial Sites, Inc., against the City of Ft. Lauderdale et al., in which it was alleged that the plaintiff owned certain described property which, on the 19th of April, 1955, was rezoned from multiple family dwellings (R-3) to light manufacturing or industrial plants (B-3 district), that in reliance on this ordinance the plaintiff entered into a contract with the City of Ft. Lauderdale, John W. Martin, as Trustee of the Florida East Coast Railroad and the Vreelands, and that the contract and ordinance were considered and dealt with simultaneously. As a part of the contract the plaintiff executed and delivered to the City of Ft. Lauderdale a deed of certain of this property for the purpose of widening N.E. 15th Street along the northern boundary of the property.
The plaintiff further alleged that it had expended large sums of money in the preparation of engineering plans and in negotiating with prospective tenants, etc.; that on July 26, 1955, the city passed ordinance No. C-1153 which repealed ordinance No. C-1118 and rezoned the lands except the east 300 feet thereof, back to R-3 from B-3.
The Final Decree of the Circuit Judge held that the City of Ft. Lauderdale was equitably estopped from enforcing the provisions of ordinance No. C-1153 against the plaintiff because of its actions and representations to the plaintiff, which resulted in plaintiff's expending substantial sums of money in furtherance of the plaintiff's planned operation and giving right-of-way deeds and easement to the city, which were accepted.
The court further stated in its Decree in paragraph d:
"Either of the ordinances in question would be valid zoning and within the discretionary powers enjoyed by the City, in the absence of special equities, and the court will surely not substitute its judgment for that of the city as concerns zoning except to protect the *49 constitutional rights of a land owner. [City of Miami Beach v. Hogan, Fla.], 63 So.2d 493. Specifically, the city may not actively participate in a procedure which results in a land-owner acting to his detriment in reliance upon a then subsisting zoning ordinance and then, arbitrarily and with knowledge of the land-owner's predicament, enact a new ordinance barring the land-owner's proposed use when such change is not supported by the substantial demands of public policy, and this even though the new or changed ordinance, standing alone, would ordinarily be deemed valid zoning according to the usual criteria."
It is generally held that a municipality may be estopped by its conduct as well as a private corporation, although many jurisdictions limit the application of the doctrine. For instance, McQuillin, Municipal Corporations, 3d Edition, Vol. 6, Section 20.13 states:
"* * * Nevertheless, it has been said, as a usual thing, the doctrine of equitable estoppel cannot be invoked against a municipal corporation as to the exercise of governmental functions, but exceptions are to be made and, where right and justice demand it, the doctrine will be held to apply, particularly where the controversy is between one class of the public and another class thereof. Generally, estoppel will not be applied to prevent or hinder the exercise of governmental functions."
Judge Dillon in his work on Municipal Corporations, 5th Edition, Vol. 3, at paragraph 1191, page 1893, says:
"Although the Courts of Illinois do not permit rights to be acquired in city streets and public places by mere adverse possession, yet they have frequently held that the doctrine of estoppel in pais is applicable to municipal corporations and that they will be estopped as justice and right may require; that there may be cases where under all the circumstances, to assert a public right would be to encourage and promote a fraud, as where a party acting in good faith under affirmative acts of a city has made such expensive and permanent improvements that it would be highly inequitable and unjust to destroy the rights acquired.
"Under such circumstances, the doctrine of equitable estoppel will be applied."
The Florida Supreme Court in the case of Texas Company v. Town of Miami Springs, Fla. 1950, 44 So.2d 808, held that where an oil company, before purchasing two lots in town for a gasoline service station, submitted plans to the town for the proposed stations and received permits to construct them, and the company then purchased the two lots and thereafter permits were renewed by Miami Springs, but one month after the renewal an emergency ordinance was passed forbidding the erection of a service station within 850 feet of another station, that the town was estopped to enforce such ordinance against the oil company.
In the case of Sharrow v. City of Dania, Fla. 1955, 83 So.2d 274, 275, the Circuit Judge held that property owners had actual or constructive knowledge of a pending ordinance requiring any buildings erected on property in a certain zone to be set back 6 feet from the property line at time the property owner applied and was granted a building permit. On appeal, the Supreme Court held that the doctrine of equitable estoppel under the facts of the case could not be applied.
From the decision of the Court the following facts appear: On October 19, 1953, the city passed on first reading an ordinance requiring a 6 foot setback on a street known as Federal Highway. Subsequently, a permit was issued to the Sharrows to construct a building based on plans which did not provide for a *50 setback and the permit authorized the building to be constructed to the property line. The setback ordinance was adopted November 16, 1953. On November 5th the Sharrows were notified that the permit was revoked. Between October 31 and November 5, the Sharrows surveyed the plot for a building; steel was ordered and delivered, lumber purchased and other expenses incurred.
In its opinion, the Court said:
"The passage of a `set-back' ordinance involves an exercise of the police power of a municipality. Admittedly, rights of property are protected by constitutional guarantees. This protection, however, cannot be extended to mean that the use of property cannot be properly regulated under the police power in the interest of the general welfare. The possession and enjoyment of all rights and property are subject to the valid exercise of the police power which is an aspect of sovereignty and all persons and property are subject to restraints and burdens necessary to secure the comfort, welfare and safety of the public. * * * In the instant case, therefore, if rights to the permit became vested, such vesting was subject to the warning evidenced by the ordinance pending on first reading and, therefore, subject to the ultimately completed exercise of the police power which was signaled by the pending ordinance.
"This is not a case of sudden, unexpected, arbitrary action by the public officials. Here the permittee was fully on notice that the City was proceeding to exercise its police power which ultimately emerged in the adoption of the ordinance on the third reading. See Bregar v. Britton, Fla. 1954, 75 So.2d 753, and Texas Co. v. Town of Miami Springs, Fla. 1950, 44 So.2d 808. In the cases last cited we held that under appropriate circumstances the doctrine of equitable estoppel may be applied against a municipality but as pointed out in Bregar v. Britton, supra, such cases are not to be compared with those similar to the one at bar where the party claiming to have been injured by relying upon an official determination had good reason to believe before or while acting to his detriment that the official mind would soon change. See also Miami Shores Village v. Wm. N. Brockway Post, 156 Fla. 673, 24 So.2d 33. There is no attack on the ordinance as being unreasonably discriminatory against the appellants as compared to others similarly conditioned."
In the case of Miami Shores Village v. Wm. N. Brockway Post 124, 156 Fla. 673, 24 So.2d 33, 35, the Florida Supreme Court held that where approximately six weeks intervened between the issuance of a building permit and the time the permittees started to build and during such interim a municipal campaign was carried on based upon the ordinance in question and candidates favoring the repeal of the ordinance were elected and immediately adopted an ordinance revoking the permit, the village was not barred by equitable estoppel from revoking the permit.
In the above case a Legion Post signed an option agreement to acquire certain real estate within the municipality, the use of which was restricted by ordinance to residential purposes, an application was made to the village council for the adoption of an ordinance so the property would be rezoned to permit the erection of an American Legion home. Ordinance No. 140 for making this change was adopted May 8, 1945.
Shortly after the issuance of the permit, the Legion Post employed construction engineers to prepare plans and specifications; excavations were made for the foundations, materials were purchased and obligations for the cost of construction were outstanding on June 21, 1945, the *51 date the village council revoked the permit previously issued.
The doctrine of equitable estoppel was asserted by the Legion Post and the municipality claimed that the doctrine was not applicable, that political candidates were brought out immediately pledged to the repeal of Ordinance No. 140, and literature was distributed disapproving the said Ordinance, that the newly elected members took office June 21, 1945, and immediately rescinded the Ordinance in question. The Court in its decision said:
"Despite the storm warnings and red light signals of disapproval of the issuance of the permit which appeared and were shown by the people of the municipality from about the date of the issuance, and existed continuously until the date of excavation and the pouring of concrete, the respondents earnestly contend that they acquired vested rights in the premises protected by our fundamental law and the doctrine of equitable estoppel appears on the record and should be applied to the municipality; that the arbitrary action of the Council of the Village in enacting Ordinance No. 144, which revoked or cancelled the permit, is not a legitimate exercise of the police power conferred by the charter on the municipality.
* * * * * *
"Approximately 6 weeks intervened between the date of the issuance of the permit and the pouring of the concrete. Within the municipality during the interim a hot municipal campaign was on and the issue was the defeat of the Councilmen voting for Ordinance No. 140, which authorized the permit. The candidates favoring repeal of the ordinance were elected and immediately adopted Ordinance No. 144. It would appear childish to assert that the permittees were without knowledge of these undisputed facts and for the respondents to wholly disregard them and simultaneously incur financial obligations incidental to the construction of the building under the questioned permit, shows that they acted while red flags were flying and cannot complain of lack of notice. The newly elected Councilmen, under the police power of the Charter and in the light of our above cited cases, had and possessed the lawful right and authority to enact Ordinance No. 144."
In the case of Bregar v. Britton, Fla. 1954, 75 So.2d 753, 755, the Supreme Court of Florida held that a Board of County Commissioners' rescission of its resolution, changing the classification of certain land from agricultural zone to a zone permitting the construction of a drive-in theatre was illegal and void under the principles of equitable estoppel where the owner of the land had made large expenditures in preparing the land for construction of the theatre and in buying sound equipment and accessories in reliance on the Board's action in changing the zone from an agricultural to a business zone.
The Court in its decision said:
"Considering some of the facts which would have bearing upon the constitutionality of the original `A' classification in this case, namely, the proximity to the property in question of the heavily traveled highway and the property zoned for business, it would seem that the case is quite close to Miami Shores Village v. Bessemer Properties, Fla., 54 So.2d 108, in which we affirmed an order of the chancellor holding a zoning ordinance unconstitutional. We find it unnecessary to decide whether the Bessemer case is controlling, however, because we are of the opinion that the action of the defendant zoning authorities on November 13, 1952, purporting to rescind the earlier resolution classifying plaintiff's property as `C-2', was illegal and void under the principles of equitable estoppel as applied by this court in Texas *52 Co. v. Town of Miami Springs, Fla., 44 So.2d 808. The cases of Gross v. City of Miami, Fla., 62 So.2d 418 and Miami Shores Village v. Wm. N. Brockway Post, 156 Fla. 673, 24 So.2d 33, are clearly distinguishable from the case at bar in that it affirmatively appeared in both of the cited cases that the party claiming to have been injured by his action in reliance upon an official determination had good reason to believe, before or while acting to his detriment, that the official mind would soon change, as it did. The record discloses no such fact in the case before us."
The case of Bregar v. Britton, supra, distinguishes the Florida cases where equitable estoppel is claimed into two groups. One in which the property owner in reliance upon the action of the municipal authorities in changing a zoning classification acted to his detriment without actual or constructive knowledge that the municipal authorities might change the zoning classifications. The other line of cases are exemplified by Gross v. City of Miami, Fla. 1953, 62 So.2d 418 and Miami Shores Village v. Wm. N. Brockway Post, 156 Fla. 673, 24 So.2d 33, in which the property owner was put on notice or should have been, by facts which he noticed or should have noticed, that he should not rely on the municipal authorities not to reclassify his property.
In the case of City of Miami Beach v. 8701 Collins Ave., Inc., Fla. 1954, 77 So.2d 428, 430, decided December 17, 1954, the Supreme Court in an opinion by Associate Justice Murphree said:
"This Court has never gone so far as to hold that a City will be estopped to enforce an amendment to a zoning ordinance merely because a party detrimentally alters his position upon the chance and in the faith that no change in the zoning regulations will occur. It is our view that such a doctrine would be an unwise restraint upon the police power of the government. All that one who plans to use his property in accordance with existing zoning regulations is entitled to assume is that such regulations will not be altered to his detriment, unless the change bears a substantial relation to the health, morals, welfare or safety of the public. See author's comments and cases cited in 138 A.L.R. 500 (II)."
It is generally held that estoppel will not be applied to prevent or hinder the exercise of municipal functions although exceptions are to be made where right and justice demand it. See McQuillin  Municipal Corporations, 3d Edition, Vol. 6, Sec. 20.13.
Under the facts as set forth in this record, is the City of Ft. Lauderdale equitably estopped from enforcing the provisions of its Ordinance No. C-1153 against the plaintiff below, appellee here? The record discloses that the passage of Ordinance No. C-1118 which changed the property of the plaintiffs from residence to light manufacturing usage, became an issue in the municipal campaign, which returned a City Commission pledged to change or at least to reopen the zoning decision with reference to the plaintiffs' property. The new Commission immediately upon taking office, referred this matter to the planning and zoning board for their recommendation. The plaintiffs failed to show any application for building permit, any construction on the property in question, and admitted knowledge of the impending change in zoning status; and that they were apprehensive of such a change.
Marion W. Ramsey, Vice-President of the plaintiff, testified as follows (See appellant's appendix page 31):
"Q. Then did you continue your plans to develop this area? A. Yes, sir. We continued our plans to develop it. We very shortly ran into a situation that gave us some qualms in the matter, because, I believe shortly *53 after the execution of this contract there was a change in the City administration here and it was made quite clear to us that they would repeal or take some action and we were very hesitant to go to the type of people we were working with on this matter on the proposition they proceed with warehouse plans and specifications, knowing that the thing would get into litigation.
"Q. Was a new Commission elected in April or May? A. I don't recall. It was shortly after the execution of the contract, in May, I believe."
The above testimony of the Vice-President of the plaintiff and subsequent testimony which he gave shows that at the time of the passage of the first Ordinance No. C-1118, on April 19, 1955, and the passage of the second Ordinance July 26, 1955, No. C-1153, there was continuous agitation, political campaigns and action taken by the new Commission, which did or should have put the plaintiff on notice that it would be proceeding at its peril in relying on the zoning change made by Ordinance No. C-1118.
The record shows that Ordinance No. C-1118 was passed April 19, 1955, that such Ordinance became a political issue in the election of candidates to the Commission, which election was then in process; that the new City Commission took office early in May and immediately referred the matter of the rezoning to its planning and zoning board. That on June 14, 1955, this Board recommended changing the zoning back to residential as had been recommended by the Board January 11, 1955. That a Resolution was adopted June 21, setting a public hearing for July 19, 1955, and that on July 26, 1955, zoning Ordinance No. C-1153 was passed.
Under the facts set forth in the record of this case, we believe that the lower court erred in holding that the city was equitably estopped to enforce Ordinance No. C-1153. It is apparent to this Court that the facts set forth herein bring this case within the orbit of Miami Shores v. Brockway Post, supra, and Sharrow v. City of Dania, supra.
Reversed and remanded for further proceedings consistent herewith.
KANNER, C.J., and PLEUS, J., concur.