DEKLE, HAL P., Associate Judge.
Appellant who was plaintiff below sought to enjoin appellee City of Coral Gables from' rescinding a resolution authorizing appellant to erect a twelve story apartment building' and from cancelling the building foundation permit thereafter issued. The chancellor took testimony and received evidence in the cause, found the equities to be with appellee City of Coral Gables and dismissed the complaint. We affirm.
Appellant after private conferences with the Mayor and a City Commissioner of Coral Gables sought and obtained by a three to two vote an authorization by resolution to-erect a twelve story “high rise” apartment-building within the City of Coral Gables on Biltmore Way at Cardena Street. This-action occurred on December 6, 1960, when there were present an estimated 200 objectors in response to a courtesy notice of the-hearing sent to neighborhood residents. They were represented by an attorney as. their spokesman in presenting strong obj ection and asserting that court action would! be initiated if the resolution passed and that it would be made an issue in the election of *505 ■new commissioners in April, 1961, which it was and which suit was filed on December 21, 1960. Appellant was present.
The question of “high rise” buildings within the City of Coral Gables had provoked strong obj ections in the past and was a question of public controversy. A petition signed by objectors ultimately numbering some 1800 was presented in opposition to the proposed resolution of December 6, 1960. Appellant, himself a resident of Coral Gables, had knowledge of all of the foregoing facts and became a party defendant to the suit.
At the time of the passage of the December 6 resolution it was public knowledge that one of the city commissioners had been elected to the Commission of Metropolitan Dade County and would shortly be replaced. This member of the city commission was one of the majority of three joining in passage of the permissive resolution. The new commissioner who was then appointed joined the commissioners who had opposed passage in rescinding such resolution on January 10, 1961, as the first item on the agenda of the first meeting after his appointment, when the commission chamber was packed with hundreds of objectors, being then represented by attorney John C. Wynn and voicing their strenuous objection and filing petition opposing it. Thirty-five days elapsed between the permissive and rescinding resolutions.
The successor commissioner noted for the record in voting to rescind the authorizing resolution that he was influenced by his 1959 campaign platform in his previous bid for a commission post, to adhere to the zoning code.
Appellant founded his complaint upon the principle of equitable estoppel, contending that he had made certain substantial expenditures in reliance upon the December 6 action of the city commission and that it could not now in equity be allowed to change its position. Actually no construction was ever begun although permit for pouring of foundation was obtained and appellant made substantial expenditures for architects’ and engineers’ fees for plans and specifications. Some of these were made even prior to submission for approval at the December 6th hearing, others prior to the institution of the suit for injunction against the City on December 21st, and some between that time and the January 10th rescission. During this time appellant also exercised his option to purchase the property in question and obligated himself on an option for the purchase of necessary adjoining property, for the express purpose of the erection of the proposed apartment. Much of the expense was incurred because of the rush basis on which it was requested by appellant “in order to be ready for occupancy by the 1961 winter season”.
The principal contention of appellant is that he did not know that the official mind would change. The test is not whether an owner knows that the official mind will change but rather that he “had good reason to believe” that such might be the case, or that the circumstances indicated that there was such a reasonable likelihood, thus suggesting caution on his part to proceed or deferment of action and expenditures. City of Miami v. State of Florida ex rel. Ergene, Inc., Fla.App.1961, 132 So.2d 474. Appellant poses the question as whether he acted other than a reasonably prudent man would have done under the circumstances. Even this question must be answered that he hardly did in the face of the warnings which persisted at the time. He testified that “I never heard of a city commission changing its mind”. One dealing with a public body must of necessity realize that its actions are often subject to change because they deal in the public interest and are amenable to public protest. It is not, as appellant would like to treat it, in the nature of a signed, irrevocable contract under circumstances such as this. City charters typically provide for intervals of time between the introduction of ordinances and their passage. “So to act unhurriedly gives the opportunity for mature consideration by the council and for *506 the people to voice objection or approval. Texas Co. v. Town of Miami Springs, Fla. 1950, 44 So.2d 808, 809.
Appellant lived in the City of Coral Gables, was a builder and investor there and was in a position to know the state of mind of the public and the objectors who made themselves heard on the question of “high rise” buildings there. He knew he was in effect challenging precedent and bucking a public tide of resentment toward such buildings in a city which is renowned as the City Beautiful and which since its founding by that prince of planners, the late George E. Merrick, in 1925, and the extolling of its quiet virtues by that oracle of oratory William Jennings Bryan and paragon of promoters Edward E. “Doc” Dammers, has always striven to remain a preferred residential area, which indeed it has.
Strenuous objection was present and made known, suit was threatened and the political issue made apparent. These facts together with the past adverse action on “high rise” buildings were surely “red flags flying” as in Miami Shores Village v. William N. Brockway Post, 156 Fla. 673, 24 So.2d 33, so that appellant can hardly complain of lack of notice of what might reasonably occur, particularly with a change in the commission itself being imminent.
Texas Co. v. Town of Miami Springs, supra, relied upon by appellant is not controlling. Special circumstances were present in that case in which the unavailability of materials due to World War II delayed building on the site re-zoned for a filling station but which was completed before entry of the order from which appeal was taken and equitable estoppel was held to apply.
The property involved in Bregar v. Britton, Fla.1954, 75 So.2d 753, was along the known commercial route of Dale Mabry Highway in Tampa, of which protestors had knowledge when purchasing the adjoining property. The Supreme Court in its opinion expressly distinguished the case from Brockway.
Appellant also argues that the property here was already zoned for apartments and contends that the authorization for additional stories above three as required by the city code is really not a change of zoning as such, which would affect the surrounding community, as in Brockway, supra, and other cases, so that those cases do not apply. We cannot agree. It is an inherent part of the zoning code of the City of Coral Gables. The fact that it is a separate section of the zoning ordinance which requires authorization for structures above three stories makes it nonetheless a zoning requirement.
The learned chancellor was eminently correct in his findings and in the entry, of the Final Decree of dismissal.
Affirmed.