174 So.2d 100 (1965)
CITY OF GAINESVILLE, a Municipal Corporation, Byron Winn, Alan Sutherland, Edwin Turlington, James G. Richardson and Howard McKinney, as and Constituting the Members of the City Commission of the city of Gainesville, Florida, T.G. Henley, as Building Inspector of the City of Gainesville, Florida, and W.T. Green, Jr., as City Manager of the City of Gainesville, Florida, Appellants,
v.
Wilbur BISHOP, Individually, and as Agent, and American Oil Company, a Corporation, Appellees.
No. F-499.
District Court of Appeal of Florida. First District.
April 13, 1965.
Rehearing Denied May 5, 1965.
*101 Fagan, Crouch & Anderson, Gainesville, for appellants.
Watson & Long, and Clayton, Arnow, Duncan & Johnston, Gainesville, for appellees.
CARROLL, DONALD K., Judge.
The defendants in a suit for a declaratory decree, concerning the plaintiffs' right to construct a service station near a university campus, have appealed from an adverse summary final decree entered by the Circuit Court for Alachua County.
The question presented for our determination in this appeal is the validity vel non of that decree, particularly with reference to the invoking therein of the doctrine of equitable estoppel against one of the defendants, a municipal corporation.
The essential facts pertinent to this inquiry, as established before the chancellor when he entered the decree appealed from herein, are substantially as follows:
Long prior to 1962 the property in question, located at the intersection of West University Avenue and U.S. Highway 441 in the defendant City of Gainesville, across the street from the College of Law and other facilities on the campus of the University of Florida, had been zoned to permit various uses, including fraternity houses, but excluding gasoline service stations. All other property in the said city had been zoned in various districts, ranging from residential to business and industrial zoning in accordance with the powers granted to the city in its charter, Chapter 15226, Laws of Florida, Special Acts of 1931.
The owner of the property in question, on which the Sigma Alpha Epsilon fraternity house had long stood, sought rezoning to a classification permitting the construction and use of gasoline service stations, and on April 3, 1962, the City Commission of Gainesville amended the zoning ordinance to allow such construction and use. Despite this change, another ordinance remained in effect, a so-called "spacing ordinance," which prohibited the location or storage of gasoline or other inflammable liquids within 250 feet of a school, church, or other place of public assembly. This distance was reduced to 200 feet by an ordinance adopted on June 25, 1962. These actions so aroused public opinion that in a city election held on March 19, 1963, two new city commissioners were elected who were committed to join with an incumbent commissioner to restore the prohibition against service stations across the street from the university campus.
Four days prior to the said city election, on March 15, 1963, the plaintiff Bishop applied for a building permit, using a set of Humble Oil Co. plans, and on March 20, 1963, the city issued to him a building permit for a Humble Oil Co. station on the said location. On the latter date Bishop *102 also applied for and received a permit to raze the Pi Kappa Phi fraternity house, which was located on adjoining property on West University Ave., at which time he held an option to buy the said property, but had not yet purchased it. The corner lot on which the Sigma Alpha Epsilon fraternity house had stood had been acquired by Bishop.
On March 25, 1963, Bishop and the Humble Oil Co. were notified by letter that the rezoning of the property in question had been a campaign issue in the said city election and that they should be so advised before relying on the building permit issued on March 20, 1963. Also, on March 25, 1963, the City Commission adopted a resolution declaring a moratorium on building in the area abutting the University of Florida campus, as well as in other areas, and directing the City Plan Board to make a study of the areas, to be completed in 30 days, and notifying persons holding building permits, including Bishop, that such permits might be in jeopardy pending the study. On the same date, March 25, 1963, Bishop entered into an option agreement with the plaintiff American Oil Company to purchase the property, contingent upon the zoning of the property to permit a service station.
On May 6, 1963, the City Commission adopted an ordinance which restored the minimum spacing distance to 250 feet on the storage of inflammable liquids to universities, churches, schools, and other places of public assembly. On July 22, 1963, the said commission also adopted another ordinance changing the zone classification of the said corner lot and other property in the area prohibiting gasoline service stations but permitting other uses of the property. Bishop was notified of the adoption of the latter ordinance and that his building permit would be revoked in 30 days, which was done.
Early in June, 1963, Bishop requested the city building inspector to substitute plans for an American Oil Company service station in place of the Humble plans under the building permit, but the inspector, although admitting that the "Amoco" plans complied with the building code and that such substitution was normally a routine matter, declined to approve the substitution. On June 17, 1963, the City Commission at a meeting approved this action of the inspector.
Bishop and the American Oil Company on September 25, 1963, filed the instant suit in the Circuit Court for Alachua County against the City of Gainesville, the members of the City Commission, the city building inspector and the city manager, alleging in the complaint that the two ordinances last described above are unconstitutional, seeking a declaration of the rights of the parties, and also praying for mandatory injunctive relief. The complaint was based upon the theory of equitable estoppel against the city and its officials. The defendants' motion to dismiss the complaint was denied by the court. Their defense was based, inter alia, upon the city's duty under the police power to adopt and enforce the ordinances in question, which ordinances were required in the public interest, and hence the doctrine of equitable estoppel should not be applied. A few months later the plaintiffs filed a motion for a summary decree, together with supporting affidavits, and later the defendants filed counter-affidavits in opposition to the plaintiffs' said motion.
On June 2, 1964, the Circuit Court entered the summary final decree appealed from herein, in favor of the plaintiffs, finding that the doctrine of equitable estoppel is applicable, and ordering the defendants to permit the construction of the service station of the American Oil Company on the property in question.
The facts and the reasoning which led the chancellor to invoke and apply the doctrine of equitable estoppel are thus set forth in his summary final decree:
"The undisputed facts before the court establish that the plaintiff, Wilbur *103 Bishop, and his associates, bought the property involved in this suit in good faith and in reliance on the defendant city's action in rezoning the property and changing its ordinances to permit its use as an automotive service station and that they would not have done so had not the city so acted to permit its use for that purpose. Plaintiff Bishop and his associates changed their position materially and incurred substantial expense in reliance on the ordinance change by the city to permit such use of the property involved herein. After the option to purchase these properties had been exercised by Plaintiff, Bishop, and he and his associates had obligated themselves to buy this property, negotiated for the sale of the property, arranged for mortgage loans, incurred substantial obligations, expended substantial sums of money, and otherwise acted in reliance on such change of ordinances and rezoning, the defendant city, notwithstanding it was apprised that plaintiff, Bishop, had so acted, nonetheless sought to block the erection of a service station on this location through changing its zoning and distance ordinances and through its attempted revocation of a building permit issued to plaintiff, Bishop."
The chancellor then declared in his decree that the admitted and undisputed facts "present a clear case of equitable estoppel" under the principles enunciated by the Supreme Court of Florida in three cases, which we will discuss below. The chancellor also held in the decree that the plaintiff American Oil Company had entered into a contract of purchase with Bishop and by virtue thereof "stands in his shoes and is entitled to claim with him the benefit of the estoppel existing against the defendants."
The three decisions of the Supreme Court of Florida cited by the chancellor in his decree as authority for invoking the doctrine of equitable estoppel are Texas Co. v. Town of Miami Springs, 44 So.2d 808 (1950), Bregar v. Britton, 75 So.2d 753 (1954), and Sakolsky v. City of Coral Gables, 151 So.2d 433 (1963).
In Texas Co. v. Town of Miami Springs, supra, the Supreme Court held that a city was estopped in a factual situation analogous to that presented in the present appeal. An oil company in that case brought a suit against a city for a declaratory decree and an injunction, representing that it had acquired two lots by warranty deed in the latter part of 1945 and the early part of 1946 for the sole purpose of erecting thereon gasoline service stations. During the negotiations for this purchase the oil company ascertained from the city that there was no existing ordinance prohibiting the construction or operation of such stations at the particular locations, and, before the deeds to the tracts were delivered, the company submitted to the city its plans and specifications for the proposed buildings and received from the city permits to construct them. Possessed of this information and the permits, the company consummated the deals for the purchase of the property. It was not, however, possible to construct the buildings for the sole reason that permission could not be obtained from the Civilian Production Administration of the United States Government. Because of this obstacle and the resultant delay, the company applied to the city for renewals of the two permits, and these permits were granted in September, 1946.
In this Miami Springs case, despite the foregoing commitments, the town council, during the following month, October, 1946, passed an ordinance (denominated an "emergency measure") providing that no gasoline service station should be erected within 850 feet of another station. Since a station was already in existence within 850 feet of each of the sites owned by the said oil company, the ordinance would, if enforced, prevent the fulfillment of the said company's plan. Later the plaintiff amended its bill of complaint by allegations apprising the court that the restrictions were no longer imposable by the said Civilian *104 Production Administration and that there was no obstacle to building the stations except the ordinance adopted in October, 1946, and renewing the prayer that the enforcement of the said ordinance be enjoined. Nevertheless, the city moved to dismiss the bill as amended on the ground, among others, that the said bill was without equity, and the chancellor entered a decree granting the said motion.
In the appeal from the chancellor's decree, the Supreme Court of Florida held that the oil company's cause "is pregnant with equity" and applied the principle of estoppel against the city, as follows:
"The whole picture presents, we think, a typical case of estoppel, and in all the circumstances we see no reason not to apply it as it would be invoked were the appellee an individual. The city permitted the appellant to go forward with its plan to purchase valuable property to further its business, and many months after the deal had been consummated repudiated, through the median of the so-called emergency ordinance, what its representatives had quite properly done, there having been certainly no impediment to the issuance of the permits at the time. See Frink v. Orleans Corporation, 159 Fla. 646, 32 So.2d 425. Dobbins v. [City of] Los Angeles, 195 U.S. 223, 25 S.Ct. 18, 49 L.Ed. 169; 40 A.L.R. 928 note.
"To state it differently, no peril to the health or welfare of the inhabitants seems to have existed in 1945 when the permits were issued, or as late as September, 1946, when they were renewed, a month before the passage of the ordinance, or at least there was no threat of such magnitude as to command the attention of the legislative body. Having allowed the appellant to proceed, the city should now be estopped from asserting that, by the method of proclaiming so belatedly an emergency, the permission given by the city had become undermined  all to the injury of one who recognized the city's authority and proceeded only after getting its sanction."
The Supreme Court then reversed the chancellor's said decree.
Similarly, in Bregar v. Britton, 75 So.2d 753 (1954), the Supreme Court of Florida, specifically relying upon the principle of equitable estoppel as applied in the above Miami Springs case, held that the rescission by the Board of Commissioners of Hillsborough County of a rezoning resolution was illegal and void under the principles of equitable estoppel. The plaintiff had, in reliance upon the said rezoning resolution, expended a large sum of money in preparing certain land for construction of a drive-in theater and had purchased sound equipment and accessories. The Supreme Court affirmed the chancellor's decree, declaring that the plaintiff was entitled to construct the theater under the said rezoning resolution.
In Sakolsky v. City of Coral Gables, 151 So.2d 433 (1963), which is the third Supreme Court decision cited and relied upon by the chancellor in the decree appealed from herein as supporting his ruling therein as to equitable estoppel, the Supreme Court granted certiorari to review a district court of appeal decision alleged to be in conflict with the decisions in the Miami Springs and Bregar cases, which we have discussed just above, and other Supreme Court cases of like import on the subject of equitable estoppel. In this Sakolsky case the holder of a permit authorizing the building of a 12-story luxury apartment building in the city of Coral Gables filed a suit to enjoin the said city, a municipal corporation, from rescinding the said building permit. The complaint was based upon the theory of equitable estoppel. The Circuit Court dismissed the complaint and the plaintiff appealed the ruling to the District Court of Appeal, which, as reported in 139 So.2d 504, affirmed the judgment. On certiorari to the Supreme Court, the latter quashed the District Court's decision and held that *105 the said holder had acted in good faith and that the said city was precluded under the doctrine of equitable estoppel from rescinding the permit, even though the holder might have had reason to believe that the city's "official mind" might be changed by a municipal election and a political controversy regarding "high rise zoning", where the holder had materially changed his position and incurred substantial expense in reliance on the said permit, which had been intentionally and lawfully issued by proper municipal officers.
The Supreme Court's decision in the Sakolsky case is significant in the present consideration, not only because it exemplifies a recent application by our highest Florida court of the doctrine of equitable estoppel against a municipality, but also because the court therein directly and effectively disposes of a point inferentially raised in the present appeal  whether appellee Bishop had a right to rely on his building permit because he should have known that the "official mind" of the City of Gainesville might change as a result of the impending municipal election. With regard to a similar point raised in the Sakolsky case, the Supreme Court therein said:
"The import of the final decree entered against petitioner, and the decision affirming same, is that estoppel does not prevent rescission by the respondent City because at the time petitioner obtained his permit and thereafter he `had good reason to believe' the official mind might change because `strenuous objection was present and made known, suit was threatened and the political issue made apparent.' Although petitioner denied personal knowledge, the court referred to widespread public notice that City Commission membership was to be altered by an election for a post coming vacant early in January, the campaign being conducted at this time on the issue of high rise zoning controversy.
"Aside from petitioner's contention that the record evidence refutes such notice or knowledge on his part, we believe the decision collides with earlier cases on the basic point of law in question. The law is clearly established that the doctrine of equitable estoppel may prevent arbitrary rescission of a permit by a municipality in such a situation `as it would be invoked were [the municipality] an individual.' To deny application of the doctrine to the facts of this case on the ground of circumstantial notice that the `official mind' might change amounts, in our opinion, to a rejection of the quoted ruling and creates an irreconcilable conflict of principle. The basic concepts of equitable estoppel, held by the prior cited case to be applicable to municipalities as to individuals, preclude the notion of such instability in municipal action merely because its business is conducted through a body whose membership is subject to change."
As found by the chancellor in the paragraph of his final summary decree, which we quoted earlier in this opinion, the undisputed evidence before the court establishes that the appellee Bishop and his associates, in good faith reliance upon the city's action in rezoning the subject property to permit its use for an automotive service station, purchased the said property, changed their position materially, and incurred substantial expense. We also agree with the chancellor's conclusion that such undisputed facts present a clear case of equitable estoppel against the appellants under the principles recognized and applied by the Supreme Court of Florida in the Miami Springs, Bregar, and Sakolsky cases, which we have discussed above. Accordingly, the summary final decree appealed from must be and it is
Affirmed.
STURGIS, C.J., and RAWLS, J., concur.