289 So.2d 424 (1974)
CITY OF NORTH MIAMI, a Municipal Corporation, et al., Appellants,
v.
Martin Z. MARGULIES, Appellee.
No. 73-1191.
District Court of Appeal of Florida, Third District.
January 22, 1974.
Arthur J. Wolfson, City Atty., and John G. Fletcher, Asst. City Atty., for appellants.
Frates, Floyd, Pearson, Stewart, Proenza & Richman, Miami, for appellee.
Before CARROLL, HENDRY and HAVERFIELD, JJ.
HENDRY, Judge.
Appellant, defendant in the trial court, seeks review of an adverse final judgment ordering the city to issue a building permit to the plaintiff.
The plaintiff currently owns 25 acres of land located within the City of North Miami. The property is bordered on the north by a boat manufacturing plant and other industrial property; on the east by the F.E.C. railroad track; and on the west by Arch Creek. Plaintiff wishes to construct a multi-family apartment facility on the property.
At the time of purchase, the land was zoned 1-B1, Industrial use, which permitted 75 units per acre. Plaintiff originally submitted plans conforming to this zoning. Thereafter, in July, 1972 the city declared a moratorium on highrise construction within the city. While this moratorium was in effect, plaintiff participated in a citizen's advisory committee study of new multi-family zoning. As a result the city enacted a new Planned Unit Development (P.U.D.) zoning ordinance, and plaintiff resubmitted his plans. The property was rezoned R.P.U.D., for residential use, in accordance with the new law, and plaintiff was issued a conditional use permit.
The new zoning ordinance provided that in order to obtain a conditional use permit, a developer must first submit plans for development, a detailed landscaping and irrigation plan, and an impact analysis, which includes a cost-benefit feasibility study, and a school, traffic and utility impact study. This information then is subject to public hearing before both the city planning *425 and zoning board and the city council, and if approved, the developer is issued a conditional use permit. The permit is different from a building permit in that it is subject to certain expressed conditions. When these conditions are fulfilled, a building permit will issue.
The new zoning classification upon plaintiff's property established a maximum density of 50 units per acre. Plaintiff's final plan called for only 33.2 units per acre. The plaintiff then undertook to fulfill the requirements of the permit, including filing a precise set of plans, preparing a new plat of the property, performing various pre-building tests and receiving governmental agency approvals. The trial judge found that the plaintiff expended $50,000 in complying with the conditions imposed by the permit and became obligated to expend another $600,000.[1]
However, on May 8, 1973, the city held an election and a new city council majority was elected. In addition, a charter amendment was approved by the North Miami electorate which imposed a limitation upon the maximum density of 25 units per acre.[2] At the city council's next meeting on May 22, 1973, this new majority voted to table approval of plaintiff's tentative plat. As of this date, according to the plaintiff, all that was necessary in order to qualify for the building permit was pollution control approval (eventually obtained) and plat approval.
On June 22, 1973, plaintiff tendered all necessary fees required by the city for issuance of a building permit. This followed a June 12 council meeting wherein plaintiff attempted to gain approval of both its tentative and final plats. The city council instead instructed its building and zoning director not to issue any building permits, and instituted proceedings to change the zoning on plaintiff's property. The plaintiff on June 26 filed the instant action seeking temporary relief from the efforts to rezone the property and also seeking declaratory and injunctive relief. The trial court permitted a public hearing on rezoning of plaintiff's land scheduled for July 17, 1973 to proceed. Following the hearing, the city planning and zoning board recommended no change in zoning on plaintiff's property.
However, on August 13 and on September 5, the city council imposed a temporary and then a permanent moratorium on plaintiff's property. Up until the final hearing in this cause, the zoning on the property remained R.P.U.D. In the final judgment the learned trial judge made the following observation:
"All governments derive their power from the people. In return for vesting that power in the government the people should be able to expect stability and fair play from their government. The evidence in this case shows that the Petitioner (plaintiff) at all times acted fairly and straightforward in his dealings with the Respondent CITY and complied with every request made of him by the CITY. He, as any citizen, has the right to rely *426 upon actions of the CITY and to expect that the CITY will conform to and comply with its regulations, procedures and representations."
The court thereupon found that the city was equitably estopped from denying a building permit to the plaintiff. We have considered the voluminous record, all points in the briefs and arguments of counsel in the light of the controlling principles of law, and have concluded that the trial court's findings are supported by substantial competent evidence.
Our Supreme Court has stated that the doctrine of equitable estoppel may be invoked against a municipality as if the city were an individual. Texas Co. v. Town of Miami Springs, Fla., 1950, 44 So.2d 808; Sakolsky v. City of Coral Gables, Fla. 1963, 151 So.2d 433. Recently, the Fourth District Court of Appeal, citing Sakolsky v. City of Coral Gables, stated that equitable estoppel applied to a local government exercising its zoning power where a property owner "(1) in good faith (2) upon some act or omission of the government (3) has made such a substantial change in position or has incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the right he acquired." City of Hollywood v. Hollywood Beach Hotel Company, Fla.App. 1973, 283 So.2d 867.
The record in the cause sub judice demonstrates that the plaintiff had incurred extensive financial obligations and expense, all in reliance upon the rezoning of his property as R.P.U.D. and the issuance of a conditional use permit. The record supports the trial court's conclusion that it would be inequitable to deny plaintiff a building permit. See Bregar v. Britton, Fla. 1954, 75 So.2d 753; City of Gainesville v. Bishop, Fla.App. 1965, 174 So.2d 100.
Therefore, for the reasons stated and upon the authorities cited, the judgment appealed is affirmed.
Affirmed.
NOTES
[1] The trial court stated that the items for which plaintiff became obligated included the architects' fees for the preparation of all plans required, engineering fees for testing of the sub-surface, for preparation of plans for sewage disposal, for all surveying and for preparation of engineering data which the city required to be submitted to the Central and Southern Florida Flood Control District.
[2] The charter amendment reads as follows:

"Section 9. Powers.
"(a) All powers of the City and the determination of all matters of policy shall be vested in the Council. Without limitation of the foregoing, the Council shall have power to:
"(9) Regulate and restrict the height and number of stories of buildings and other structures, the size of yards and courts, the density of populations and the location and use of buildings for trade, industry, business, residence or other "purposes, provided, however, that the density of populations in every instance shall be limited to a maximum density of twenty-five (25) residential units per acre, and further that no building or structure, except Public buildings, shall be authorized which exceeds forty (40) feet in height or four (4) stories."