877 F.2d 892
 MARINE ONE, INC., Robert E. Schmidt, Plaintiffs-Appellants,
Cross-Appellees,
Marine Two, Inc., et al., Plaintiffs,
v.
MANATEE COUNTY, Manatee County Board of Commissioners, in
their official capacity, Edward W. Chance, Vernon Vickers,
Kent G. Chetlain, Westwood H. Fletcher, Jr., and Lloyd C.
Hagaman, Defendants-Appellees, Cross-Appellants.
 No. 87-3656.
 United States Court of Appeals,
Eleventh Circuit.
 July 19, 1989.
 
 David P. Ackerman, L. Louis Mrachek, and G. Joseph Curley, West Palm Beach, Fla., for plaintiffs-appellants cross-appellees.
 H. Hamilton Rice, County Atty., Brandenton, Fla., Robert Pass, Tampa, Fla., for Manatee County, Manatee County Bd. of Com'rs, et al.
 Frances Makemie Toole and John R. Bush, Tampa, Fla., for Edward W. Chance, Vernon Vickers, et al.
 Appeal from the United States District Court for the Middle District of Florida.
 Before RONEY, Chief Judge, and HILL, Circuit Judge, and MARCUS*, District Judge.
 RONEY, Chief Judge:
 
 
 1
 Plaintiffs Robert E. Schmidt and Marine One, Inc. brought an action against Manatee County, Florida and its board of commissioners, and the commissioners in their official capacities for damages under 42 U.S.C.A. Sec. 1983, alleging that the County's rescission of permits authorizing construction of a marina deprived plaintiffs of a property interest without compensation and violated plaintiffs' substantive due process rights. The district court directed a verdict against Marine One, Inc. (Marine One) and entered a judgment for defendants notwithstanding a $1,010,000 compensatory and punitive damage jury verdict for Schmidt. Plaintiffs appeal. We affirm the district court's holding that neither Schmidt nor Marine One had a protectable property interest in these permits.
 
 
 2
 From 1982 until 1985, plaintiffs operated a marina known as "Marker 50" that was located in Manatee County from 1982 until 1985. Marine One was the "operating entity" which conducted the marina business. Marine Two leased equipment to Marine One. Schmidt was an investor in the operation and Edward Thornley and Richard Pearson ran the day-to-day operations. Marine One had to look for another site to run its operation because the owner of the current site was planning to convert it to condominiums. Plaintiffs planned to build a commercial marina in Cortez, a small village in Manatee County on an inlet from the Gulf of Mexico. Cortez relies on its commercial fish houses for its economic base.
 
 
 3
 Manatee County ordinances required plaintiffs to obtain two permits. A special permit was required for all piers more than 80 feet in length. The planned marina would have three docks, the longest being 420 feet in length. No permit could be issued if a dock would come closer than 25 feet to the center line of any publicly used channel. A special use permit was required for any commercial development to ensure conformity with the County's comprehensive land use plan. The plan prohibited docks that "hinder navigation" and that "interfere with the use of surrounding properties."
 
 
 4
 Based on representations by plaintiffs' representatives that the docks would in no way impede the boat traffic into or out of the Cortez fishing area, the Manatee County Board of County Commissioners issued the permits authorizing the land to be developed for this marina and the construction of these particular docks. The permits were consolidated and are referred to collectively as "SP 84-17."
 
 
 5
 Plaintiffs obtained the other state and federal permits required, Schmidt took title to the property, and construction began on the marina in early March 1985. When construction began, the residents of Cortez complained that the pilings laid for placement of the docks crossed the channel used by fishing vessels to come and go from the Gulf of Mexico and the Cortez fish houses.
 
 
 6
 In a public hearing on March 26, 1985, the Board issued a "Stop Work Order," which halted construction of the docks and seawall. At the same time, the Board scheduled a meeting for April 12, 1985 to conduct a full public hearing to determine whether the permit should be rescinded. At the meeting, the Board heard arguments from both sides and voted unanimously to rescind the permit.
 
 
 7
 Before that hearing was held, this action was filed, seeking, among other things, preliminary and permanent injunctive relief against enforcement of the Stop Work Order or other interference with the marina project. The district court scheduled a hearing on plaintiffs' motion for a preliminary injunction for April 17, 1985, but plaintiffs cancelled on the day of the hearing. The motion was never renewed.
 
 
 8
 Unable to find an alternative location for the marina, plaintiffs continued to operate Marine One at the Marker 50 location until approximately August 1985, when Marine One closed.
 
 
 9
 At the three-week jury trial, the court directed a verdict against all plaintiffs but Schmidt. As to Schmidt, the court submitted special interrogatories to the jury, which required the jury to determine whether Schmidt had been denied all viable economic use of his "property." When the jury inquired during the course of deliberations as to whether "property" meant Schmidt's land or the permit, the court submitted a revised interrogatory form, over the County's objection, that allowed the jury to find that Schmidt had been denied all viable economic use of either his land or his permit.
 
 
 10
 The jury answered the special interrogatories by finding that Schmidt had been denied all viable economic use of his permit, but not his land, and that the County's actions in rescinding the permit were arbitrary and capricious. The jury awarded Schmidt compensatory damages in the amount of $300,000 against the County and the individual commissioners, and awarded punitive damages against the individual commissioners.
 
 
 11
 The district court then granted defendants' motion for judgment notwithstanding the verdict. Edward Thornley, Richard Pearson and Marine Two, a separate corporation, were also plaintiffs in the original action, but only Schmidt and Marine One have appealed.
 
 
 12
 To prevail under 42 U.S.C.A. Sec. 1983, plaintiffs must show that the action by the governmental body or governmental representative constitutes a violation of a federally protected right. Schmidt and Marine One claim that the County's action of revoking the building permit violated the Fifth Amendment prohibition against taking private property without just compensation and the Fourteenth Amendment requirement of substantive due process. The threshold determination, then, is whether plaintiffs have a property interest protected by the Constitution.
 
 
 13
 State law creates and defines the parameters of a plaintiff's property interest for section 1983 purposes. Paul v. Davis, 424 U.S. 693, 709, 96 S.Ct. 1155-1164, 47 L.Ed.2d 405 (1976); Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Whether state law has created a property interest is a legal question for the court to decide.
 
 
 14
 Florida law is clear that there is no property right in possession of the permit. City of Hollywood v. Hollywood Beach Hotel Co., 283 So.2d 867 (Fla. 4th DCA 1973), aff'd in part, rev'd in part on other grounds, 329 So.2d 10 (Fla.1976); City of Boynton Beach v. Carroll, 272 So.2d 171 (Fla. 4th DCA), cert. denied, 279 So.2d 871 (Fla.1973). Schmidt argues here, as he did in district court, that since he has acted in reliance upon the permit, he has a vested property right because an equitable estoppel action would lie against the revocation of the permit under Florida law. He relies on two Florida cases, Hollywood Beach Hotel Co. v. City of Hollywood, 329 So.2d 10, 15-16 (Fla.1976) and Sakolsky v. City of Coral Gables, 151 So.2d 433 (Fla.1963), for the proposition that "a property owner obtains a vested property interest in the ability to develop his property in a manner previously allowed if the governmental entity is equitably estopped from changing that manner."
 
 
 15
 Contrary to Schmidt's assertion, however, what state law provides is the right to pursue an action for injunctive relief, if the landowner has in good faith made some substantial change in position or has incurred extensive obligations in reliance on the permit so that it would be highly inequitable and unjust not to enforce the permit. Hollywood Beach Hotel Co., 329 So.2d at 15-16 (Fla.1976) (citing Sakolsky v. City of Coral Gables, 151 So.2d 433 (Fla.1963)).
 
 
 16
 In Sakolsky, the holder of a permit authorizing construction of a 12-story apartment building brought an action against the City to enjoin rescission of his building permit, based upon the theory of equitable estoppel. The court determined that "the doctrine of equitable estoppel may prevent arbitrary rescission of a permit by a municipality," Sakolsky, 151 So.2d at 435, and concluded that the plaintiff "should not be denied the benefit of the estoppel doctrine upon which his complaint is founded." Id. at 436.
 
 
 17
 In City of Boynton Beach, the court acknowledged that possession of a building permit does not create a vested right, and that "a permit may be revoked ... in the absence of circumstances which would give rise to equitable estoppel." 272 So.2d at 173. The City appealed the grant of a peremptory writ of mandamus compelling the City to issue a building permit. The court held that "[N]o claim of equitable estoppel has been presented by the appellees. Therefore, no vested right was created by the appellees' application for a building permit...." Id.
 
 
 18
 The Fourth District Court of Appeal applied the same reasoning in a case dealing with rezoning as well as revocation of a building permit. In City of Hollywood, landowners were granted injunctive relief after the City rezoned property and revoked landowners' building permit. The City appealed. The court made clear that possession of a building permit does not create a vested property right, but if circumstances exist to support an equitable estoppel action, the landowner has the right to that remedy. City of Hollywood, 283 So.2d at 869.
 
 
 19
 These cases make clear that Florida law does not provide the ability to recover money damages for rescission of a permit. Cf. Corn v. City of Lauderdale Lakes, 816 F.2d 1514, 1517 (11th Cir.1987) (under Florida law, exclusive remedy available to property owner challenging zoning ordinance was suit to invalidate the zoning ordinance and enjoin its enforcement). The only right provided a permit holder under state law, then, is the right to retain the permit and invalidate any rescinding resolution once he has satisfied the requirements of equitable estoppel. Thus, the district court correctly stated that if Schmidt acquired any right at all as a result of his reliance, it was a right to pursue equitable estoppel under proper circumstances.
 
 
 20
 Because Schmidt had this remedy available to him, if the facts would indeed support the claim, the State did not deprive him of any protectable property interest. Having failed to prove the existence of a cognizable property interest, the claims of both Schmidt and Marine One must fail as a matter of law.
 
 
 21
 Because we affirm the district court's decision, the issue raised in defendants' cross-appeal--whether the district court erred in ruling that defendants' motions for new trial would be denied if the JNOV were set aside--need not be reached.
 
 
 22
 AFFIRMED.
 
 
 
 *
 Honorable Stanley Marcus, United States District Judge for the Southern District of Florida, sitting by designation