**VILLAS OF LAKE JACKSON, LTD., et al., Plaintiffs,**

**v.**

**LEON COUNTY, et al., Defendants.**

**No. TCA 89–40247–WCS.**

United States District Court, N.D. Florida, Tallahassee Division.

June 15, 1992.

E.C. Deeno Kitchen, Robert King High, Jr., Ken W. Davis, Tallahassee, Fla., for plaintiffs.

John Cooper, Gregory T. Stewart, Tallahassee, Fla., for defendants.

## ORDER ON MOTION TO DISMISS THE FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT

SHERRILL, United States Magistrate Judge.

Pending is Defendants' motion to dismiss the fourth amended and supplemental complaint and memorandum. Docs. 166 and 167. The motion argues that the complaint does not allege a constitutionally protected property interest, the claims are not ripe, the complaint fails to state claims upon which relief may be granted, the individual Defendants have absolute or qualified immunity, Plaintiffs have not been deprived of a protected property interest, and there are insufficient allegations of abuse of power. Plaintiffs have filed a response. Doc. 185. Both parties have filed supplemental authority. Docs. 176 and 190.

Defendants have also moved to strike the demand for injunctive relief as to count I

and the demand for monetary relief as to count IV. Doc. 168.

Dismissal of a complaint or a portion thereof pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted should not be ordered unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The court must accept as true the allegations of the complaint when ruling upon the motion.

### I. The factual allegations of the fourth amended complaint.

The fourth amended and supplemental complaint, doc. 164, alleges that Plaintiff Richard L. Pelham, through the business organizations also named as Plaintiffs, owns a tract of land of approximately 46 acres near Lake Jackson in Leon County, Florida. Plaintiffs seek to construct multi-family dwellings on the land.

It is alleged that in 1972, at the request of Pelham and another person, the county rezoned the property to multi-family residential (RM–3). It is alleged that the county knew at the time of rezoning that Pelham had a contract to purchase the land contingent upon such rezoning, and that he intended to develop all of it. Plaintiffs allege that prior to the rezoning decision, the county considered the issue of the water quality of Lake Jackson.

It is also alleged that since 1972, with the approval of the county, to address the water quality concerns and in further reliance upon the zoning Pelham expended funds to construct facilities for the project as planned. This included a storm water treatment system, a clubhouse, pool, roadways, and a central sewer system, all of which were made large enough to accommodate the full project as planned, not just the 120 initial units. The complaint alleges that over the years the county, through its authorized agents, has acknowledged that Plaintiffs possess "vested" rights under Florida law to complete the entire planned development under the RM–3 zoning, and

that under Florida law, Plaintiffs have such vested rights.

It is further alleged that in January 1988, Plaintiffs applied for the permits necessary to construct another phase of the project, and that at that time the zoning permitted such development. The county then enacted a series of emergency ordinances imposing a moratorium upon issuance of permits for structures below the 120 feet elevation in the Lake Jackson basin. Since much of the land was below that level, the permits were not issued.

On August 30, 1988, the county enacted ordinance 88–53, restricting development around Lake Jackson to abate pollution of the lake and other bodies of water. The ordinance was soon replaced on October 21, 1988, with a substantially identical ordinance 88–62. That ordinance now requires that 95% of the property below the 100 foot elevation level be left in an undisturbed state, and that no structures be placed below 96.5 feet of elevation. Since a substantial portion of the project was below the 100 foot elevation, it is alleged that the ordinance effectively has frustrated development of the project as originally conceived by Plaintiffs. Plaintiffs allege that the ordinance was enacted with intent forever to halt their project despite their vested rights, and will destroy substantially all economically viable use of the property.

It is alleged that Plaintiffs thereafter applied for permits necessary to complete the remainder of their planned project, but the county has refused or failed to issue the permits due to the ordinance. Plaintiffs allege that the ordinance as applied to the subject real property is arbitrary, capricious, and not reasonably calculated to further the alleged public purpose of preserving the water quality in Lake Jackson, but goes far beyond that purpose. It is alleged that the elevation lines have no reasonable basis in fact, the planned project can be constructed to manage storm water so as to avoid degradation of Lake Jackson, that it will cause no degradation as compared to upland development already permitted, and that alternative uses are permitted under

the ordinance which will contribute much more to degradation of the lake.

In the summer of 1989, Plaintiffs allege that they sought to mitigate damages by filing an application for permits to construct a smaller project than originally planned above the 100 foot elevation, but with reservation of rights to complete the full project as planned. The county issued the necessary site plan approval, permits, and building permits. The complaint alleges that the county "purported" to issue the permits as conditioned upon the outcome of rezoning proceedings, and that these rezoning activities had commenced as early as June 20, 1989. Plaintiffs began construction on this smaller project in reliance upon these permits and its prior vested rights.

On October 24, 1989, the county rezoned the property to estate classification, permitting only one single family home per two acre lot, thus abolishing the zoning which had previously permitted multi-family development. The county ordered Plaintiffs to stop all work on the smaller plan for multi-family construction which had commenced. On October 31, 1989, the county revoked all prior permits issued to Plaintiffs.

As a consequence, it is alleged that the county has evidenced an intent to prohibit all further development of the multi-family project as planned by Plaintiffs since 1972.

Count I is a claim for just compensation for a taking of Plaintiff's property in violation of the Fifth and Fourteenth Amendments of the United States Constitution. The property alleged to have been taken is the underlying real property and Plaintiffs' "vested rights to complete the Project." As will be discussed ahead, Plaintiffs have identified and alleged both the right to develop the entire project as originally planned and a right to develop the smaller project for which permits were issued in 1989. Ordinance 88–62 and the estate zoning are challenged as invalid as applied to Plaintiffs' real property.

Count II asserts an arbitrary and capricious substantive due process claim arising from the same facts.

Count III asserts a taking without just compensation substantive due process claim arising from the same facts.

Count IV alleges the same facts and further alleges that Defendants "contemporaneously permitted other similarly situated property owners to go forward with development in and around Lake Jackson when plaintiffs were denied such rights." It is claimed that this is a violation of equal protection of the law.

Count V sues the members of the Board of County Commissioners in both individual and official capacities based upon the facts alleged in paragraphs 1 through 23, 26, 28, 31, and 33. Count V does not specifically identify the constitutional wrongs alleged to have been committed by these Defendants.

II. Whether the just compensation claim in count I and the due process takings claim in count III are ripe.

Questions concerning ripeness go to subject matter jurisdiction. *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n. 7 (11th Cir.1989). Thus, whether the claims presented are ripe for review must be resolved before addressing any constitutional questions.

A. *A final, definitive decision.*

■ The court may not entertain the just compensation claim in count I until "the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question." *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 191, 105 S.Ct. 3108, 3119, 87 L.Ed.2d 126 (1985). Only then will the factfinder be able to determine the ultimate issue, whether the owner will be "unable to derive economic benefit" from the land. *Id.* See also *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986).

■ The same rule applies to the substantive due process taking claim in count III. The court may not entertain such a claim until the administrative agency has

arrived at a definitive decision sufficient for the court to determine the central issue, whether the regulation "goes so far that it has the same effect as a taking by eminent domain." *Williamson,* 473 U.S. at 197–200, 105 S.Ct. at 3122–3123; *Greenbriar, Ltd. v. City of Alabaster,* 881 F.2d at 1573–1574.

Plaintiffs have identified three property interests which they allege have been taken without just compensation or in violation of substantive due process. Those interests are the underlying real property, an alleged vested property right to develop the project as originally planned, and an alleged vested property right to develop the smaller project as permitted in 1989.

Plaintiffs have alleged that permits for the original project were sought but never issued, and that permits for the smaller project were obtained and then revoked. The land is now zoned to prohibit multi-family dwellings. Defendants have not suggested that it is possible to obtain a variance to construct multi-family dwellings under estate zoning or to construct below the regulated elevations. Thus, Plaintiffs have alleged final, definitive decisions which have "taken," or entirely negated, these alleged property interests.

But claims of denial of all viable economic uses of the underlying land, whether arising under the just compensation clause or substantive due process, are not ripe for adjudication on the allegations currently made. Application to construct the smaller multi-family project in 1989 partially aided in obtaining such a final decision, but Plaintiffs have not alleged that they have requested approval of single family development consistent with estate zoning and ordinance 88–62. Further, Plaintiffs have not alleged specifically how such development would be not economically viable or how such an application would be futile.

Bare allegations that such application would be futile are not enough, particularly since it is apparent that the ordinance and estate zoning permit development of portions of the land at lower densities. As was held in *Eide v. Sarasota County,* 908 F.2d 716, 725 n. 16 (11th Cir.1990), *cert.*

*denied,* 111 S.Ct. 1073, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991), ". . . for these claims [due process takings and just compensation] to be ripe, the plaintiff is required to reapply for zoning in order to establish what extent of development *will be permitted* and for a court to determine whether the regulation has gone 'too far.'" (Emphasis added.) See also *Executive 100, Inc. v. Martin County,* 922 F.2d 1536, 1540–1541 (11th Cir.1991).

■ Plaintiffs point out that they have alleged in general terms that the land is no longer of any value to them. They contend that for notice pleading purposes this is enough. Ordinarily that is true, but as to this issue it is not. Ripeness goes to this court's subject matter jurisdiction. *Greenbriar, supra.* Consequently, specific allegations of fact must be made so that the court can be assured it has jurisdiction. For this reason, ripeness may be determined on a motion to dismiss. *Executive 100, Inc. v. Martin County,* 922 F.2d 1536, 1541 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991). Plaintiffs have not alleged specifically why the land would have no viable economic purpose if developed consistent with ordinance 88–62 and estate zoning, and have not applied for a development consistent with those restrictions.

Thus, the motion to dismiss as to the claim in counts I and III that all viable economic use of the underlying land has been taken by Defendants will be granted since this claim is not ripe as alleged. Dismissal will be without prejudice since it may be that such allegations can be made. Counts I and III will otherwise not be dismissed for this ripeness issue.

### B. *A state just compensation remedy for count I.*

■ The second aspect of ripeness applies only to the just compensation taking claim in count I. The court may not entertain a just compensation claim until the land owner has availed himself of the procedures afforded by the state for obtaining just compensation. *Williamson, supra,* 473 U.S. at 194, 105 S.Ct. at 3120. This is

not required as to the substantive due process taking claim in count III, however. The relief afforded by this theory is not just compensation, but invalidation of the governmental action and actual damages. *Williamson*, 473 U.S. at 197, 105 S.Ct. at 3122. Consequently, prior resort to the state just compensation remedies is not a condition precedent for this sort of claim to be ripe for consideration by this court. *Greenbriar, Ltd., supra*, 881 F.2d at 1574 n. 8.[1]

■ Plaintiffs contend that Florida does not have an adequate just compensation remedy. They rely upon *Corn v. City of Lauderdale Lakes*, 816 F.2d 1514 (11th Cir. 1987). That case held that where a zoning ordinance is confiscatory, an action in inverse condemnation for just compensation in Florida is not available; the only remedy is an action to have the ordinance declared invalid. 816 F.2d at 1517, citing *Dade County v. National Bulk Carriers, Inc.*, 450 So.2d 213 (Fla.1984).

But the principle of law established by *National Bulk Carriers* has been altered by *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). *First English* held that where a land regulation causes a temporary taking of property, the just compensation clause of the Fifth Amendment mandates that a state provide a just compensation remedy. The Court held that just compensation must recompense for the period until the regulation no longer applies, whether by having been declared invalid or having been voluntarily withdrawn by the governmental body. The Court left open several options: "We merely hold that where the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was in effect." 482 U.S. at 321, 107 S.Ct. at 2389. The Court's ruling, however, applies to a permanent taking as the

Court said as much: "These cases reflect the fact that 'temporary' takings which, as here, deny a landowner all use of his property, are not different in kind from permanent takings, for which the Constitution clearly requires compensation." 482 U.S. at 318, 107 S.Ct. at 2388.

Florida courts have read the *First English Evangelical Lutheran Church* decision as mandating a remedy for compensation when a taking occurs as a result of a confiscatory zoning ordinance, at least to the extent that the zoning has had that effect. For example, *Glisson v. Alachua County*, 558 So.2d 1030 (Fla. 1st DCA), *review denied*, 570 So.2d 1304 (Fla.1990), concerned whether elements of the Alachua County comprehensive plan and an ordinance implementing that plan constituted takings of plaintiff's property. The court held that "[i]f it should be determined that the government's activities effected a taking, subsequent action, such as invalidating the ordinance, will not relieve the government of its duty to provide compensation for the period that the ordinance was in effect." 558 So.2d at 1036. The court cited *First English Lutheran Church*, but not *National Bulk Carriers*.

Similarly, *Orlando/Orange County Expressway Authority v. W & F Agrigrowth–Fernfield, Ltd.*, 582 So.2d 790 (Fla. 5th DCA), *review denied*, 591 So.2d 183 (1991), held that a "regulation effects a taking if it does not substantially advance a legitimate state interest or if the regulation denies an owner economically viable use of his land." 582 So.2d at 792. The court held that "[i]t is axiomatic that the constitutions of the United States and the state of Florida require that just and full compensation be paid in the event of a taking." *Id.* No reference was made to *National Bulk Carriers*, but the court cited *First English Lutheran Church. See also Snyder v. Board of County Commissioners of Brevard County, Florida*, 595 So.2d 65 (Fla. 5th DCA 1992).

---

1. *Greenbriar* concerned what it called an arbitrary and capricious substantive due process claim based upon a theory of a taking, that the regulation went too far and deprived the owner

of all economic use of the land. It thus was essentially the same as Count III in this case. Accordingly, its holding must be applied to Count III.

The decision in *Orlando/Orange County Expressway Authority* relied upon *Joint Ventures, Inc. v. Department of Transportation*, 563 So.2d 622 (Fla.1990). The issue in *Joint Ventures* was not directly whether compensation must be provided for a regulatory taking, but whether Fla. Stat. §§ 337.241(2) and (3) were constitutional. Those statutes permitted the Florida Department of Transportation to freeze development of private land which the Department intended to condemn at some future date by eminent domain. Thus, Plaintiffs are correct that *Joint Ventures* is not precisely on point for this reason. But on the way to the result it reached, *Joint Ventures* silently discarded the central ruling of *National Bulk Carriers*. Defendants in *Joint Ventures* had sought to salvage the statute by arguing that the landowners could obtain adequate relief by an action for compensation by inverse condemnation. The Florida Supreme Court agreed that this remedy existed, but held that it was not adequate under the circumstances. 563 So.2d at 627.[2]

*National Bulk Carriers*, therefore, has only partial continuing vitality. An option is left open to the regulatory agency, to either amend or withdraw the confiscatory regulation. But after *First English Lutheran Church*, it is now certain that a property owner in Florida has a state remedy for compensation for the period of the taking until the regulation is amended or withdrawn. *Accord, Barima Investment Company, Inc. v. United States*, 771 F.Supp. 1187, 1189 (S.D.Fla.1991), *aff'd*, 959 F.2d 972 (11th Cir.1992); *Houle et al. v. Twachtmann, et al.*, TCA 89–40074, 1992 WL 209631 (N.D.Fla., March 11, 1992), doc. 24, p. 11.

▮ Therefore, as Plaintiffs do not allege that they have sought just compensation from Florida courts, count I is not ripe for consideration by this court as to any theory, whether a taking of the underlying land, a taking of the 1989 permits, or a taking by refusal to grant permits for the full development as originally planned in 1972. Count I will be dismissed in its entirety without prejudice for lack of ripeness in this sense.

III. Whether the arbitrary and capricious substantive due process claim in count II and the equal protection claim in count IV are ripe.

▮ Defendants contend that count II is not ripe because Plaintiffs have alleged that Defendants have deprived them of all economically viable use of their property[3] by the application of ordinance 88–62 and estate zoning to their property, but have not applied for alternative uses of the land. They make the same claim as to count IV.[4] Defendants point out that *Eide, supra*, intimated that when an "as applied" challenge is made and it is alleged that all economically viable use of the property has been precluded, the additional ripeness element of *MacDonald, supra*, applies. That is, Plaintiffs not only must show that the ordinance was applied to them, but they must show that they have reapplied and obtained a final, definitive decision for those developments which would be permitted under the ordinance. 908 F.2d at 725 n. 16. *Eide* held that the same standards apply to an equal protection claim. 908 at 724 n. 12.

Defendants are correct in their analysis of the complaint, and as a consequence, the same result follows for counts II and IV as discussed above for counts I and III. To the extent that both challenge the actions

2. "Although the right to seek relief through inverse condemnation is implied in the constitution and a compensation provision need not be expressly included for an owner to be entitled to such compensation, *see First English*, [footnote omitted] that remedy is not equivalent to a property owner's remedy under the doctrine of eminent domain." 563 So.2d at 627. See also at 625. The Court did not mention *National Bulk Carriers*.

3. Paragraph 36 of the fourth amended complaint. At oral argument Plaintiffs confirmed that they intended to allege deprivation of all viable economic uses of the land, as well as denial of permission to construct the several projects as planned.

4. That paragraph actually alleges deprivation of "all or substantially all" economically viable use.

of Defendants which have prevented development of the planned multi-family dwellings, the motion to dismiss will be denied. The ordinances and estate zoning have been applied to Plaintiffs' land, and the 1989 permits for the smaller project were revoked. Plaintiffs applied for full permitting under RM–3 zoning, but no permits were issued.

Counts II and IV are not ripe, however, to the extent that Plaintiffs seek to show that all viable economic uses of the land have been precluded under ordinance 88–62 and estate zoning. This is so since Plaintiffs have not obtained a final, definitive decision as to other economic uses for the land under current regulation and zoning.

IV. Summary as to ripeness issues.

Count I will be dismissed without prejudice. Florida provides an adequate just compensation remedy for a taking claim. Plaintiffs have not alleged that they have sought this remedy and had it denied to them as to any claims in count I. Thus, all claims arising under count I are not ripe. And as a consequence the court lacks subject matter jurisdiction of count I. Additionally, that portion of count I which seeks just compensation for a taking of the underlying property is also not ripe for lack of allegations that Plaintiffs have sought approval to develop under estate zoning and ordinance 88–62.

Counts II, III, and IV will dismissed without prejudice only as to claims that all viable economic uses of the underlying property have been precluded. Those claims are not ripe for lack of allegations as to application for approval of development under existing regulations. However, the motion to dismiss will be denied as to counts II, III, and IV to the extent that these claims are founded upon alleged property rights to obtain permits to develop the original project and the smaller 1989 version. Plaintiffs have sufficiently alleged final, definitive decisions as to those claims, and the second aspect of ripeness, denial of a state just compensation remedy, does not apply to a due process or equal protection claim.

V. Whether Plaintiffs have alleged a constitutionally protected property interest.

■ Defendants also contend that the alleged "vested property right to complete the apartment complex" is not a property interest sufficient to sustain a taking clause claim. This argument is repeated with respect to the due process and equal protection claims. While the taking clause claim, count I, will be dismissed, this constitutional issue remains as to counts II and III since these allege deprivation of "property" by denial of substantive due process.

Plaintiffs allege a right to obtain permits to develop the entire project premised upon Plaintiffs' reliance upon RM–3 zoning, assurances by agents of the county that they had "vested" rights, and expenditure of money to improve the property. They admit they never received full permits for the original project.

Plaintiffs also allege that they obtained permits in 1989 for the smaller project, but the amended complaint equivocates as to whether these were issued without conditions:

Based upon the pendency of these rezoning proceedings, the County purported to condition the issue of the permits, mentioned in the preceding paragraph [for the smaller project above the 100 foot elevation line], upon the outcome of the rezoning proceedings. Those rezoning proceedings, however, are void and of no effect because of plaintiffs' vested rights commencing in 1972.

Doc. 164, paragraph 19. Thus, Plaintiffs have alleged that they knew that the property might be rezoned when they applied for the smaller development permits, and that the county "purported" to make the permits conditioned upon whether rezoning actually occurred. Plaintiffs then argue a right to develop the smaller project based upon vested rights to develop the original, larger project.

As a consequence, Plaintiffs have alleged that the 1989 permits were conditional. The "property interest" in those permits, therefore, is based entirely upon the exist-

ence of a vested property right to develop the full development as planned in 1972.

The question is whether Florida's state law doctrine of vested development rights gives rise to a property interest for federal due process purposes upon the allegations made by Plaintiffs. It is a question of some importance for this state in light of the more prevalent and extensive local government land use regulation now occurring in Florida.

It is first noted that Chief Judge Stafford of this court recently considered this issue and reached a conclusion consistent with Plaintiffs' legal theory. *Parker et al. v. Leon County,* TCA 91–40133–WS, 1992 WL 209626 (N.D.Fla., March 18, 1992), doc. 20, pp. 16–17. The Southern District of Florida has reached much the same conclusion. *Corn v. Lauderdale Lakes,* 771 F.Supp. 1557, 1568 (S.D.Fla.1991) and *Mt. Sinai Medical Center, Inc. v. Miami Beach,* 706 F.Supp. 1525, 1530 (S.D.Fla. 1989). These decisions apply several Eleventh Circuit cases as precedent.

But the precedent from the Eleventh Circuit on the question has been difficult to follow and apply. Defendants rely primarily upon the first *Marine One* decision, *Marine One, Inc. v. Manatee County,* 877 F.2d 892 (11th Cir.1989), and *MacKenzie v. City of Rockledge,* 920 F.2d 1554 (11th Cir.1991) for their argument that Plaintiffs have not alleged a property interest protected by the Fifth Amendment taking clause.

The first *Marine One* decision distinguished between a taking of the real property and a taking of a permit to develop real property. 877 F.2d at 894. The distinction is important since there is usually a vast difference between the claim that all viable economic uses for the underlying real property have been precluded, which, by orthodox constitutional law, is the *sine qua non* of a "taking" of real property, e.g. *Maher v. City of New Orleans,* 516 F.2d 1051, 1065–1066 (5th Cir.1975), *cert. denied,* 426 U.S. 905, 96 S.Ct. 2225, 48 L.Ed.2d 830 (1976) and cases cited, and the

rescinding of a building permit, which obviously is a taking of the permit, but may not be a taking of the real property. *Marine One* initially held that:

> Florida law is clear that there is no property right in possession of the permit [authorizing construction of a marina]. *City of Hollywood v. Hollywood Beach Hotel Co.,* 283 So.2d 867 (Fla. 4th DCA 1973), *aff'd in part, rev'd in part on other grounds,* 329 So.2d 10 (Fla.1976); *City of Boynton Beach v. Carroll,* 272 So.2d 171 (Fla. 4th DCA), *cert. denied,* 279 So.2d 871 (Fla.1973).

877 F.2d at 894. The court noted, however, that when a property owner has detrimentally relied upon an authorized permit to develop his property in a particular way, Florida cases have recognized an injunctive remedy to estop the regulatory body from rescinding the permit. 877 F.2d at 894– 895. While one of these cases referred to this as a "vested property interest in the ability to develop his property in the manner previously allowed," [5] the court also noted that the remedy was only equitable, "the right to retain the permit and invalidate any rescinding resolution," and not a right to damages. 877 F.2d at 895. Consequently, the court held that deprivation of a previously issued permit was not deprivation of a property interest protected by the United States Constitution. *Id.*

The first *Marine One* case seems to follow the logic of *Paul v. Davis,* 424 U.S. 693, 710–711, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976). *Paul v. Davis* held that interest in good reputation "is simply one of a number which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions." It held that depriving one of that interest, therefore, was not deprivation of "property" or liberty in the due process sense. 96 S.Ct. at 1165–1166. The first *Marine One* decision appears to have reasoned that the fact that Florida provides an equitable remedy to invalidate action to rescind a permit where there has been detrimental reliance

---

**5.** *City of Hollywood v. Hollywood Beach Hotel Co.,* 283 So.2d 867, 870 (Fla. 4th DCA 1973), *aff'd in part, rev'd in part on other grounds,* 329 So.2d 10 (Fla.1976). See footnote 9, *infra.*

does not cause the permit so issued to be a species of property for due process or taking clause purposes.

The difficulty with that reasoning, however, is that the Supreme Court has also held that a property or liberty interest may be located by looking to an "independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The most common manner is for the state to create "substantive predicates" mandating the outcome to be reached upon a finding that the relevant criteria have been met. *Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989); *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). The same principles are applied to determine what is "private property" as meant in the taking clause. *MacKenzie,* 920 F.2d at 1559; *Marine One,* 877 F.2d at 894, *on rehearing* 898 F.2d 1490 (11th Cir.1990).

A development permit, unlike reputation, is typically a creature of ordinance and statute, and entitlement to issuance of such a permit often is determined by satisfaction of the "substantive predicates" set by law as conditions for issuance of such permits. Depending upon the underlying state law, those "substantive predicates" in an appropriate case might give rise to a property interest protected by due process (or the taking clause), if the *Roth* principle is to have meaning. That was the conclusion in *Spence v. Zimmerman,* 873 F.2d 256 (11th Cir.1989), decided a few months before the first *Marine One* decision. *Spence* is just one of the troubling cases in this area. In that case, the property owner had been issued a building permit and commenced construction. With the building only partially completed, the owner sought and was

denied a temporary occupancy certificate. Suit was brought alleging denial of property without substantive due process. Citing the *Roth* case, the court adopted the reasoning of *Littlefield v. City of Afton,* 785 F.2d 596, 602 (8th Cir.1986), which held that:

> [S]tate law creates a constitutionally protectible property interest in a building permit if (1) the municipality lacks discretion and must issue a building permit to an applicant who complies with the statutory requirements *and* (2) the application has fulfilled the requirements.

873 F.2d at 258. Extending this reasoning, the court held that entitlement to issuance of a temporary occupancy certificate might be a property interest protected by due process, depending upon the underlying state law. *Id.*[6]

Perhaps it was for this reason, as well as other recent Eleventh Circuit cases, that the first *Marine One* decision is no longer precedent as originally written. In the second decision, *Marine One, Inc. v. Manatee County,* 898 F.2d 1490 (11th Cir.1990), the court granted rehearing to consider whether *A.A. Profiles, Inc. v. City of Ft. Lauderdale,* 850 F.2d 1483 (11th Cir.1988), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1743, 104 L.Ed.2d 180 (1989), *Wheeler v. City of Pleasant Grove,* 664 F.2d 99 (5th Cir., Unit B, 1981),[7] *cert. denied,* 456 U.S. 973, 102 S.Ct. 2236, 72 L.Ed.2d 847 (1982), and *Corn v. City of Lauderdale Lakes,* 816 F.2d 1514 (11th Cir.1987) had held that Florida law provides a property interest in a duly issued building permit. 898 F.2d at 1491. The court did not answer that question, however, but shifted its focus to the nature of the underlying property, public lands beneath navigable waters, and state law concerning permits (or licenses) to conduct activities on public lands. It held that Florida law creates no property interest in a permit to construct a marina on public lands. For this amended reason the court

---

**6.** It must be noted that the *Littlefield* decision has now been called into question by the Eighth Circuit. *Lemke v. Cass County, Nebraska,* 846 F.2d 469, 470 (8th Cir.1987). It is also contrary to *Creative Environments, Inc. v. Estabrook,* 680 F.2d 822 (1st Cir.1982).

**7.** Decisions by the unit B panel of the former Fifth Circuit are binding precedent of the Eleventh Circuit. *Stein v. Reynolds, Inc.,* 667 F.2d 33, 34 (11th Cir.1982).

concluded that plaintiffs had no property interest in the permits. 898 F.2d at 1493.

The second decision relied upon by Defendants, *MacKenzie,* was decided in 1991 and repeated the ruling in the first *Marine One* decision that "Florida law creates no property right in possession of a building permit." 920 F.2d at 1559. *MacKenzie* alternatively held, however, that since the zoning ordinance in question had been enacted before the property owner had acquired the property, he had no claim. This was a sufficient basis for the decision standing alone.

In short, *Marine One* decided only the factual issue before it, leaving for another day the question of whether the reasoning of the first *Marine One* opinion was correct. *MacKenzie* cannot be relied upon by this court since it overlooked the second *Marine One* opinion. It also is less persuasive because the result it reached was alternatively based upon the fact that the zoning ordinance in question had been enacted before the plaintiff had acquired the property.[8]

This leaves the cases cited by Plaintiffs. *Wheeler v. City of Pleasant Grove,* and *A.A. Profiles, Inc. v. City of Ft. Lauderdale, supra,* while providing more persuasive precedent for adjudication of this question, still have not clearly analyzed the "property interest" problem in conventional (*Roth* and *Paul v. Davis*) due process terms. In *Wheeler,* a land owner obtained a permit to build apartments. The land was zoned for apartments. The owner commenced construction, but after public outcry the city adopted an ordinance prohibiting the construction. For reasons not stated by the Eleventh Circuit, the trial court had found that the ordinance was a "confiscatory measure." Citing *Maher v. City of New Orleans,* 516 F.2d 1051, 1065 (5th Cir.1975), *cert. denied,* 426 U.S. 905, 96 S.Ct. 2225, 48 L.Ed.2d 830 (1976), the court held that since the ordinance was confiscatory, it was a "taking." 664 F.2d at 100. The court also held that the ordinance was arbitrary and capricious in violation of substantive due process.

The finding in *Wheeler* that the ordinance in question was "confiscatory" provides little guidance to this court as to what is meant by a "confiscatory" ordinance or whether the court found that there is a property interest in a building permit. *Wheeler* did not discuss Alabama property law concerning building permits, and there was no analysis as to other uses the land owner had for his property other than construction of apartments. Presumably some other viable economic use could have been made of the land, and therefore the property had not been "taken" in the traditional sense.

The ruling is also difficult to understand in light of *Maher. Maher* did not involve a building permit. It simply involved a zoning regulation. *Maher* owned a Victorian cottage in the French Quarter. He wanted to demolish the building and erect a seven story apartment complex. New Orleans had enacted a historic preservation ordinance which prohibited demolition of existing structures, and refused to issue a permit for demolition of the cottage. The court first held that the ordinance was proper exercise of police power. Then it turned to whether the ordinance constituted a "taking" notwithstanding its validity.

As to the "taking" question the court held that "a regulatory ordinance may nonetheless be a taking if it is unduly onerous so as to be confiscatory." 516 F.2d at 1065. It noted that a taking does not occur when the regulation prevents the property from achieving its maximum economic potential, citing *Goldblatt v. Town of Hempstead,* 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962), *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926), and *Hadacheck v. Sebastian,* 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915).

**8.** Further, *MacKenzie* held that "the doctrine of equitable estoppel may prevent the arbitrary rescission of a permit," *Id.,* citing the first *Marine One* opinion and *Sakolsky.* It is unclear whether the court meant that it was considering a pendent state law equitable estoppel claim or an arbitrary and capricious substantive due process claim. If it was the latter, it was contrary to the reasoning of the first *Marine One* case, which found that the state law remedy gave rise to no property interest protected by due process.

Finding that Maher had failed to show that sale of the property was impracticable, that commercial rental could not provide a reasonable rate of return, or that other potential uses of the property were foreclosed, the court held that no taking had occurred. 516 F.2d at 1066.

In summary, it cannot readily be determined how the *Maher* principles were applied in *Wheeler*. It is inferred that *Wheeler* stands for the proposition that what was "confiscated" was the building permit, not the land. The building permit was clearly taken in its entirety. The land and its residual uses probably were not taken.

*Wheeler* was the basis for the decision in *A.A. Profiles*. In *A.A. Profiles* the City of Ft. Lauderdale approved by ordinance a wood chipping industrial operation on plaintiff's land. This activity was also consistent with existing zoning. When the city discovered violations of the permit as issued, it suspended the approval provided by the ordinance and subsequently made the permit a nullity by rezoning the land. As to the taking issue, the court first found the case indistinguishable from *Wheeler*. It then held:

> The original resolution granted appellant a *property* interest. The rezoning ordinance denied appellant this *property* interest because the new classification did not accommodate a development like the wood-chipping operation. The City Commission's action therefore was a confiscatory measure.... We note also that although the taking did not occur simply because appellant expended a great amount of money to begin the project, this expenditure in reliance on the resolution underscores the importance of the original resolution.

850 F.2d at 1488 (emphasis added).

In sum, *A.A. Profiles* does not discuss Florida law, but it clearly holds that a development permit duly issued by a Florida local government is a species of property for due process and taking clause pur-

poses, especially if the property owner has taken actions in reliance upon the permit to his detriment. As a corollary, it held that when a state or local government precludes the use of such a development permit, it has taken property for which just compensation must be provided.

The *A.A. Profiles* ruling appears to be consistent with Florida case law at least to the extent that the owner has substantially relied to his detriment upon the existence of a duly issued permit. In *Sakolsky v. City of Coral Gables*, 151 So.2d 433 (Fla. 1963), the Florida Supreme Court held that a property owner who obtained preliminary approvals to construct a 12 story apartment building, including approval of traffic flow, fire hazard conditions, high rise zoning clearance, and issuance of a foundation permit, and then changed his position by incurring substantial expenses in reliance upon the permission granted, was entitled to complete the project. The Court found the city to be equitably estopped to rescind the permit.

Relying on *Sakolsky*, *City of Hollywood*, *supra*, held that "mere possession of a building permit does not create a vested property right." It held, however, that equitable estoppel exists if the property owner, with a permit in hand, in good faith makes a substantial change in position or incurs such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the right he acquired. 283 So.2d at 869. The court referred to this condition (where estoppel is shown) as a "vested property right." [9]

This is consistent with *City of Boynton Beach*, 272 So.2d 171 (Fla. 4th DCA 1973), *cert. denied*, 279 So.2d 871 (Fla.1973). Citing to numerous Florida decisions, that case held:

> Florida law since 1945 has been clear that *possession* of a building permit does not create a vested right, and that a permit may be revoked where the zoning law has been amended subsequent to the

**9.** "The continuance of the *vested property right*, derived from the possession of a building permit and a good faith reliance on the zoning laws by the landowner resulting in some substantial

change in position or incurrence of extensive obligations, depends on the facts of the case." 283 So.2d at 870 (emphasis added).

issuance of the permit in the absence of circumstances which would give rise to equitable estoppel.

272 So.2d at 173. *Accord, Pompano Beach v. Yardarm Restaurant, Inc.,* 509 So.2d 1295 (Fla. 4th DCA 1987).

The doctrine of equitable estoppel in Florida also appears to create arguable "property" interests in obtaining permits in certain cases even when no permits have been issued. It has been held that mere purchase of land does not create a right to rely on the existing zoning. *Walker v. Indian River County,* 319 So.2d 596, 599–600 (Fla. 4th DCA 1975). But equitable estoppel may create rights to obtain permits if the owner expends significant sums of money in reliance upon existing zoning and preliminary approvals obtained from the regulatory governmental body even though final approvals have not yet been obtained. *Id.* citing *Town of Largo v. Imperial Homes Corporation,* 309 So.2d 571 (Fla. 2d DCA 1975) and *Board of County Commissioners of Metropolitan Dade County v. Lutz,* 314 So.2d 815 (Fla. 3rd DCA 1975). See also *The Florida Companies v. Orange County, Florida,* 411 So.2d 1008, 1011 (Fla. 5th DCA 1982); *City of North Miami v. Margulies,* 289 So.2d 424 (Fla. 3rd DCA 1974).

It is also noted that only preliminary approvals had been obtained in the *Sakolsky* case, *supra,* yet equitable estoppel was allowed. Similarly, no permit had actually been issued in *Corn, supra.* However, a state circuit court had held that the owner had a vested right to obtain a permit, but had not yet received the permit. The district court found that since the owner had fulfilled all of the statutory requirements to obtain a permit, and the regulatory agency had no discretion not to issue the permit as determined by the circuit court, the owner had a sufficient property interest in obtaining a permit to sustain a taking claim for continued refusal to grant the permit. In reaching this conclusion, *Corn* relied upon *Spence v. Zimmerman,* discussed above. 771 F.Supp. at 1568.

In summary, it cannot be said that "it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claims which would entitle him to relief" as to the existence of a property right for taking clause purposes to develop the entire project as originally planned. While no final permits were issued for the original plan, the complaint alleges that the county conceded that Plaintiffs had vested rights to complete their project as originally planned, and that Plaintiffs relied upon these assurances and the prior zoning, to their detriment. In light of the cases discussed above, it cannot be said that this fails to state under Florida law a sufficient property right in the constitutional sense.

The question of whether Plaintiffs have sufficiently alleged the existence of a property right in the 1989 permits is a closer question. *City of Hollywood* held that "[t]here exists a separate line of cases which hold that if the landowner has actual or constructive knowledge of an impending zoning change when he obtains his building permit, he has no basis for a claim of equitable estoppel even if he has substantially changed his position or incurred extensive obligations." Cited for this rule are *Sharrow v. City of Dania,* 83 So.2d 274 (Fla.1955) and *City of Ft. Lauderdale v. Lauderdale Industrial Sites,* 97 So.2d 47 (Fla.1957). 283 So.2d at 870. To the same effect is *City of Boynton Beach v. Carroll, supra,* which held that the zoning law in effect at the time of the final decision on the application for a permit governs, especially where the application was made after publication of the required notice prior to amendment of the zoning law. 272 So.2d at 172. See also *Pompano Beach v. Yardarm Restaurant, Inc.,* 509 So.2d 1295, 1297 (Fla. 4th DCA 1987), which held that a municipality may properly delay issuance of a building permit when there is a change in zoning in progress which would affect the permit.

Were the issue limited to what happened in 1989, setting aside the allegations of activities before that year, the court would probably grant the motion to dismiss. This would be so because it would appear that under these circumstances Florida law recognizes no property rights in the permits

since it is alleged that they were conditionally issued. But even that issue is entangled with broader question of property rights to have permits issue for the original planned development. If Plaintiffs can show a property right to obtain permits for the original project, the same facts and legal theory will entitle them to a property right in the 1989 permits.

Consequently, this aspect of the motion to dismiss will be denied.

VI. Whether Plaintiffs have alleged a protected property interest as to counts II and IV.

Defendants raise the same legal issue here as raised concerning count I. Defendants have not contended that Plaintiffs do not have property rights in the underlying property, but argue that Plaintiffs have no property rights in obtaining permits to proceed with the development sufficient to sustain either an arbitrary and capricious substantive due process or equal protection claim. The argument is unpersuasive for the reasons stated above. Florida law recognizes a form of property right to obtain development approvals based upon the allegations of fact made by Plaintiffs. It cannot be said that Plaintiffs could not prevail under this theory upon no set of facts which may be proved.

VII. Whether Plaintiffs have sufficiently alleged in count II that Defendants' conduct in the enactment of ordinances 88–53 and 88–62, and rezoning to estate zoning were arbitrary and capricious.

An arbitrary and capricious due process claim requires allegations that a property interest of constitutional stature was deprived for an improper motive and by means that were pretextual, arbitrary, and capricious. *Greenbriar*, 881 F.2d at 1577. The complaint alleges that the ordinances and rezoning were enacted to preserve water quality in Lake Jackson. From this Defendants contend that count II of the complaint alleges a rational basis for the ordinances and rezoning, and thus fails to allege a claim upon which relief

may be granted for arbitrary and capricious denial of substantive due process. Defendants contend that the court has authority to grant a motion to dismiss for this reason, citing *South Gwinnett Venture v. Pruitt,* 491 F.2d 5 (5th Cir.) (en banc), *cert. denied,* 416 U.S. 901, 94 S.Ct. 1625, 40 L.Ed.2d 119 (1974).

The complaint also alleges, however, that ordinances 88–53 and 88–62 were arbitrary and capricious because not reasonably calculated to further the alleged public purpose of preserving the water quality in Lake Jackson, and instead went far beyond that purpose. The complaint alleges that the elevation lines have no reasonable basis in fact and that the planned project can be constructed to manage storm water so as to avoid degradation of Lake Jackson, or at least to degrade it no more than upland development already permitted. It is further alleged that alternative uses already permitted under the ordinance will contribute much more to degradation of the lake. Finally, the complaint alleges that the rezoning to estate zoning, revocation of Plaintiffs' permits, and issuance of the stop work order was with intent to forbid Plaintiff's project entirely.

Accepting these allegations as true it cannot be said that Plaintiffs can prove no set of facts in support of this claim which would entitle them to relief.

This aspect of the motion to dismiss count II will be denied.

VIII. Whether the individual Defendants have absolute legislative immunity or qualified immunity.

Defendants have read count V as seeking to impose individual liability only for the constitutional wrong in count I. Doc. 167, p. 21. Plaintiffs did not respond to this aspect of the motion to dismiss. Doc. 185, p. 23. At oral argument, Plaintiffs stated that they would clarify this aspect of their pleading. If only count I is involved in count V, then the court need not adjudicate whether the individual Defendants have either absolute or qualified immunity since that count is not ripe for consideration by the court.

The court will defer ruling upon these issues until the complaint is clarified.

## IX. Defendants' motion to strike.

Defendants have moved to strike the demand for injunctive relief as to count I and the demand for monetary relief as to count IV. Doc. 168. The motion is now moot as to count I. While it is true that the *Eide* decision held that the remedy for an equal protection violation in a case of this sort would be an injunction against enforcement of the invalid regulation, 908 F.2d at 722, damages as may be proven are also allowable for a violation of equal protection brought pursuant to 42 U.S.C. § 1983. See *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (Fourteenth Amendment due process). *Cf. Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) ("Equal protection" as aspect of Fifth Amendment due process). The motion will be denied as to count IV.

Therefore it is ORDERED that:

1. Defendants' motion to dismiss is PARTIALLY GRANTED. All of count I and those portions of counts II, III, and IV which claim that all viable economic uses of the underlying property have been taken or denied are DISMISSED without prejudice.

2. Defendants' motion to dismiss is otherwise DENIED.

3. Ruling is deferred as to absolute or qualified immunity of the individual Defendants.

4. Defendants' motion to strike is DENIED.

5. Plaintiffs shall have 20 days from the date of entry of this order on the docket in which to file a fifth amended complaint consistent with this order. It shall also identify the constitutional claims intended in count V of the fourth amended complaint and allege the specific facts upon which individual liability is based.

6. The Clerk shall refer this file to me on July 13, 1992, for ruling upon the deferred portion of the motion to dismiss, whether the individual Defendants have absolute or qualified immunity based upon the amended allegations. If either party wishes to file further briefing on the subject, notice of intent to do so must be promptly filed after the fifth amended complaint is filed.

DONE AND ORDERED.